UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2015-NXS2, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2015-NXS2, acting by and through Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of July 1, 2015, | Civil Action File No. _____ |
| Plaintiff, | |
| v. | |
| WINTA ASSET MANAGEMENT LLC and SHUIGUN CHEN, | |
| Defendants. | |

## COMPLAINT

Plaintiff Wilmington Trust, National Association ("Trustee"), as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-NXS2, Commercial Mortgage Pass-Through Certificates, Series 2015-NXS2 (the "Trust") (Trustee as trustee of the Trust shall be referred to hereinafter as "Plaintiff"), acting by and through Rialto Capital Advisors, LLC ("Special Servicer"), as Special Servicer under the Pooling and Servicing Agreement dated as of July 1, 2015 (the "PSA"), states its complaint as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in Wilmington, Delaware.

2.      Trustee is the duly appointed and presently serving trustee of the Trust created under the PSA.

527548.000006 23713005.2

3.     Trustee, not individually, but solely in its capacity as trustee for the Trust under the PSA, acting by and through the Special Servicer, brings this action with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth.  Based upon the Delaware citizenship of Trustee, Plaintiff is a citizen of Delaware.

4.     Defendant Winta Asset Management LLC ("Borrower") is a Delaware limited liability company with an address c/o 70 Broad LLC, 70 Broad Street, New York, New York 10004.  Borrower is the owner of certain real property and improvements commonly known as the Riverview Center, located at 70 Broad Street, New York, New York 10004, and more particularly described in Exhibit 1 annexed hereto (the "Property").  As Borrower is a limited liability company, its citizenship is determined by that of its members.  Upon information and belief, 70 Broad LLC, a New York limited liability company, is the sole member of Borrower and Shuigun Chen ("Guarantor") and Gui Xin Hong, both citizens of the People's Republic of China, and Winta Holding Co., Ltd., a New York corporation, are the members of 70 Broad LLC.  Based on the Chinese and New York citizenship of its members, Borrower is a citizen of both the People's Republic of China and New York.

5.     Guarantor, who, upon information and belief, is an individual and resident of the People's Republic of China, guaranteed Borrower's obligations pursuant to the Guaranty (as defined in paragraph 16 of this Complaint).

6.     Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because it is between citizenship of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

527548.000006 23713005.2

7.      Pursuant to Section 10.6(b) of the Loan Agreement, the state and federal courts located in New York County, New York are the exclusive venue of disputes under the contract.  Specifically Section 10.6(b) of the Loan Agreement provides in relevant part:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN NEW YORK COUNTY, NEW YORK AND BORROWER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING…

8.      Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3).

## FACTUAL BACKGROUND

### FIRST COUNT
**(Breach of Contract on the Loan Agreement)**

**A.      The Loan.**

9.      By Loan Agreement dated as of April 29, 2015 (the "Loan Agreement"), Silverpeak Real Estate Finance LLC ("Original Lender"), Plaintiff's predecessor-in-interest, agreed to make a loan to Borrower in the original principal amount of $15,000,000.00 (the "Loan").

10.     As evidence of the Loan, Borrower, _inter alia_, executed and delivered to Original Lender a Consolidated, Amended and Restated Promissory Note dated April 29, 2015 and in the original principal amount of $15,000,000.00 (the "Note").

11.     As collateral security for the payment of the Note, Borrower executed, acknowledged and delivered to Original Lender a Consolidated, Amended and Restated Mortgage,

3

Assignment of Leases and Rents and Security Agreement dated as of April 29, 2015 (the "Mortgage") pursuant to which Borrower, inter alia, granted to Original Lender a security interest in the Property.  On May 26, 2015, Original Lender recorded the Mortgage with the Office of City Register of the City of New York (the "City Register's Office") as City Register File Number ("CRFN") 2015000174143, and duly paid the mortgage recording taxes.

12.     The Mortgage also includes a security interest in favor of the holder of the Mortgage in, inter alia, the buildings, structures, fixtures and other improvements now or hereafter located on the Property as well as the Mortgaged Property (as defined in the Mortgage), including, but not limited to, the Equipment (as defined in the Mortgage), the Leases (as defined in the Mortgage), the Rents (as defined in the Mortgage), and the Intangibles (as defined in the Mortgage (collectively, the "Collateral").

13.     As additional collateral security for the payment of the Loan, Borrower executed, acknowledged and delivered to Original Lender an Assignment of Leases and Rents dated as of April 29, 2015 (the "ALR") pursuant to which Borrower, inter alia, granted to Original Lender a security interest in all Leases and Rents (as defined in the Loan Agreement) generated by the Property.  On May 26, 2015, Original Lender recorded the ALR with the City Register's Office as CRFN 2015000174144.

14.     To perfect its interest in the Collateral, on May 26, 2015, Original Lender recorded a Uniform Commercial Code Financing Statement with the City Register's Office as CRFN 2015000174145 (the "County UCC-1").  The County UCC-1 names Original Lender as the secured party and Borrower as the Debtor.

15.     To further perfect its interest in the Collateral, on April 30, 2015, Original Lender filed a Uniform Commercial Code Financing Statement with the Delaware Secretary of

4

State ("DE SOS") as File Number 20151856037 (the "State UCC-1").  The State UCC-1 names Original Lender as the secured party and Borrower as the debtor.

16.     In order to induce Original Lender to give the Loan and to further secure its repayment, Guarantor executed a Guaranty of Recourse Obligations dated April 29, 2015 (the "Guaranty"), wherein and whereby Guarantor irrevocably, absolutely and unconditionally guaranteed the full, prompt and complete payment when due of the Guaranteed Obligations (as defined in the Guaranty) (The Loan Agreement, the Note, the Mortgage, the County UCC-1, the State UCC-1, the Guaranty and all related loan documents shall be referred to collectively herein as the "Loan Documents").[1]

**B.     Assignment of the Loan Documents to Interim Holder.**

17.     Original Lender executed an allonge to the Note, dated June 26, 2015 (the "Interim Allonge"), indorsed in favor of SPREF WH II LLC ("Interim Holder"), and delivered the Note, with the Interim Allonge affixed thereto, to Interim Holder.  By virtue of this delivery, Original Lender transferred to Interim Holder all of its rights, title and interest in and to the Note and Interim Holder became the holder of the Note.

18.     Original Lender also executed and delivered an Assignment of Mortgage, dated June 26, 2015 (the "Interim Assignment of Mortgage"), pursuant to which Original Lender transferred to Interim Holder all rights, title and interest in and to the Mortgage and Interim Holder became the holder of the Mortgage.  On July 8, 2015, Interim Holder recorded the Interim Assignment of Mortgage with the City Register's Office as CRFN 2015000233799.

19.     Original Lender also executed and delivered an Assignment of Assignment of Leases and Rents, dated June 26, 2015 (the "Interim Assignment of ALR"), pursuant to which

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed in the Loan Documents.

Original Lender transferred to Interim Holder all rights, title and interest in and to the ALR and Interim Holder became the holder of the ALR.  On July 8, 2015, Interim Holder recorded the Interim Assignment of Mortgage with the City Register's Office as CRFN 2015000233800.

20.     By Uniform Commercial Code Financing Statement Amendment filed with the City Register's Office on July 8, 2015 as CRFN 2015000233801, Original Lender assigned the County UCC-1 to Interim Holder.

21.     By Uniform Commercial Code Financing Statement Amendment filed with the DE SOS on July 1, 2015 as File Number 20152839735, Original Lender assigned the State UCC-1 to Interim Holder.

**C.      Assignment of the Loan Documents to Plaintiff.**

22.     Interim Holder executed an allonge to the Note, dated July, 2015 and indorsed in favor of Plaintiff (the "Plaintiff Allonge"), and delivered the Note, with the Interim Allonge and Plaintiff Allonge affixed thereto, to Plaintiff.  By virtue of this delivery, Interim Holder transferred to Plaintiff all of its rights, title and interest in and to the Note and Plaintiff became the holder of the Note.

23.     Interim Holder also executed and delivered an Assignment of Mortgage, dated July 14, 2015 (the "Plaintiff Assignment of Mortgage"), pursuant to which Interim Holder transferred to Plaintiff all rights, title and interest in and to the Mortgage and Plaintiff became the holder of the Mortgage.  On October 13, 2015, Plaintiff recorded the Plaintiff Assignment of Mortgage with the City Register's Office as CRFN 2015000365610.

24.     Interim Holder also executed and delivered an Assignment of Assignment of Leases and Rents, dated July 14, 2015 (the "Plaintiff Assignment of ALR"), pursuant to which Interim Holder transferred to Plaintiff all rights, title and interest in and to the ALR and Plaintiff

6

became the holder of the ALR.  On October 13, 2015, Plaintiff recorded the Plaintiff Assignment of ALR with the City Register's Office as CRFN 2015000365611.

25.     By Uniform Commercial Code Financing Statement Amendment filed with the City Register's Office on October 13, 2015 as CRFN 2015000365612, Interim Holder assigned the County UCC-1 to Plaintiff.

26.     Additionally, on December 2, 2019, Plaintiff filed a Uniform Commercial Code Continuation with the City Register's Office as CRFN 2019000396780 (the "County UCC Continuation").  The County UCC Continuation names Plaintiff as the secured party and Borrower as the debtor.

27.     By Uniform Commercial Code Financing Statement Amendment filed with the DE SOS on December 3, 2015 as File Number 20155761183, Original Lender assigned the State UCC-1 to Interim Holder.

**D.     Borrower's Defaults Under the Loan Documents.**

**i.     The Payment Default**

28.     Pursuant to Section 2.2.1 of the Loan Agreement, Borrower is obliged to remit the Monthly Debt Service Payment on each Payment Date.

29.     Section 8.1(a) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "any portion of the Debt is not paid when due[.]"

30.     By notice dated April 14, 2020 (the "April Notice of Default"), Plaintiff, through counsel, notified Borrower and Guarantor of, inter alia, Borrower's failure to remit the Monthly Debt Service Payment Amount on the April 2020 Payment Date.

31.     Accordingly, an Event of Default has occurred and is continuing under the Loan Documents as a result of, inter alia, Borrower's failure to remit the necessary amounts due

7

on the April 2020 Monthly Payment Date and each Payment Date monthly thereafter (the "Payment Default").

     **ii.**     **The Cash Management Default**

     32.     Pursuant to Section 3.1 of the Loan Agreement, Borrower is obliged to, <u>inter alia</u>, "cause all Rents to be transmitted directly by the Tenants of the Property into the Clearing Account[]" and "if Borrower or Manager receive any Rents, [to] deposit such amounts into the Clearing Account within one (1) Business Day of receipt[]" (collectively, the "Cash Management Obligations").

     33.     Section 8.1(m) of the Loan Agreement provides that an Event of Default shall occur if, <u>inter alia</u>, "a default shall be continuing under any of the other terms, covenants or conditions of this Agreement or any other Loan Document not otherwise specified in this Section 8.1, for ten (10) days after notice to Borrower (and Guarantor, if applicable) from Lender, in the case of any default which can be cured by the payment of a sum of money, or for thirty (30) days after notice from Lender in the case of any other default[.]"

     34.     By notice dated August 15, 2019 (the "August Notice of Default"), Plaintiff, through its master servicer under the PSA, Wells Fargo Commercial Mortgage Servicing ("Master Servicer"), notified Borrower and Guarantor of, <u>inter alia</u>, Borrower's failure to uphold the Cash Management Obligations.

     35.     Plaintiff reminded Borrower and Guarantor of Borrower's failure to uphold the Cash Management Obligations in the March Notice of Default (defined below), and therein demanded that Borrower cure said default, but Borrower failed to do so.

36.     Accordingly, an Event of Default has occurred and is continuing under the Loan Documents as a result of, <u>inter alia</u>, Borrower's continued failure to uphold the Cash Management Obligations for ten days after notice (the "Cash Management Default").

### iii.     The Cessation of Operation Default

37.     Pursuant to 5.10.1(d) of the Loan Agreement, "…Borrower shall not enter into a proposed Lease or a proposed renewal, extension or modification of an existing Lease without the prior written consent of Lender,…"

38.     In turn, Section 5.10.2 of the Loan Agreement provides: "Borrower: … (ix) shall not cancel or terminate any Lease or accept a surrender thereof (except in the exercise of Borrower's commercial reasonably judgment in connection with a tenant default under a Lease) without the prior consent of Lender,…"

39.     At the time Original Lender made the Loan to Borrower, Borrower, <u>inter alia</u>, represented to Original Lender that the Rent Roll attached as Schedule 3 to the Loan Agreement was true and accurate.

40.     The Rent Roll reveals that at the time of the Loan's origination in April 2015, the Property was 100% occupied by 4 separate tenants. Upon information and belief, Borrower terminated all of the Leases identified in the Rent Roll in April 2017 without Plaintiff's knowledge and consent.

41.     Upon information and belief, since Borrower's improper termination of the Leases, Borrower has allowed the Property to remain vacant thereby ceasing operation of the Property as a mixed use office and residential property since at least April 2017 in violation of Section 5.15 of the Loan Agreement, thereby resulting in the immediate occurrence of an Event of Default under Section 8.1(h) of the Loan Agreement.

9

42.     As a result of: (a) Borrower terminating the Leases without Plaintiff's consent; (b) Borrower allowing the Property to remain vacant since April 2017 and (c) Borrower ceasing operation of the Property as a mixed use office and residential property, an Event Default exists under the Loan Documents for which no cure exists (the "Cessation of Operations Default").

### iv.     The Borrower Financial Reporting Default

43.     Pursuant to Section 6.32 and 6.33 of the Loan Agreement, Borrower was obliged to provide to Plaintiff, inter alia, quarterly reporting for 2017, 2018, First Quarter of 2019 Second Quarter of 2019 and Year End Annual Reports for 2017 and 2018 (collectively, the "Missing Borrower Required Records").

44.     Borrower failed to produce the financial records in an apparent attempt to defraud Plaintiff by concealing its improper termination of the Leases and cessation of operations at the Property.

45.     By the August Notice of Default, Plaintiff, through the Master Servicer, notified Borrower and Guarantor of, inter alia, Borrower's failure to produce the Missing Borrower Required Records and demanded Borrower provide same.

46.     Borrower's failure to deliver the Missing Borrower Required Records to Plaintiff continued for thirty days after the August Notice of Default, thereby resulting in the occurrence of an Event of Default under Section 8.1(m) of the Loan Agreement.

47.     Plaintiff reminded Borrower and Guarantor of Borrower's failure to provide the Missing Borrower Required Records in the March Notice of Default (defined below) and of its failure to provide the Additional Missing Borrower Required Records (as defined in the March Notice of Default), and therein demanded that Borrower cure said default, but Borrower failed to do so.

48.     Accordingly, an Event of Default has occurred and is continuing under the Loan Documents as a result of, <u>inter alia</u>, Borrower's continued failure to deliver the Missing Borrower Required Records for thirty days after notice (the "Borrower Financial Reporting Default").

      **v.**      **<u>The Guarantor Financial Reporting Default</u>**

49.     Pursuant to Section 4 of the Guaranty, Guarantor was obliged to provide, within 30 days after filing of Guarantor's tax return, such tax return, together with certain certifications and certificates more particularly set forth therein (collectively, the "Missing Guarantor Required Records").

50.     By notice dated March 25, 2020 (the "March Notice of Default"), Plaintiff, through counsel, Plaintiff notified Borrower and Guarantor of, <u>inter alia</u>, Guarantor's failure to produce the Missing Guarantor Required Records and demanded that they provide same.

51.     Guarantor's failure to deliver the Missing Guarantor Required Records to Plaintiff continued for thirty days after the March Notice of Default, thereby resulting in the occurrence of an Event of Default under Section 8.1(m) of the Loan Agreement.

52.     Plaintiff reminded Borrower and Guarantor of Guarantor's failure to provide the Missing Required Records in the April Notice of Default and therein demanded that they cure said default, but they failed to do so.

53.     Accordingly, an Event of Default has occurred and is continuing under the Loan Documents as a result of, <u>inter alia</u>, Guarantor's continued failure to deliver the Missing Required Records for thirty days after notice (the "Guarantor Financial Reporting Default").

54.     Section 8.2 of the Loan Agreement provides, in relevant part, that:

11

Upon the occurrence of an Event of Default (other than an Event of Default described in paragraph (f) or (g) of Section 8.1 above) and at any time and from time to time thereafter, in addition to any other rights or remedies available to it pursuant to the Loan Documents or at law or in equity, Lender may take such action, without notice or demand (and Borrower hereby expressly waives any such notice or demand), that Lender deems advisable to protect and enforce its rights against Borrower and in and to the Property; including declaring the Debt to be immediately due and payable (including unpaid interest, Default Rate interest, Late Payment Charges, Yield Maintenance Premium and any other amounts owing by Borrower), without notice or demand; and upon any Event of Default described in paragraph (f) or (g) of Section 8.1 above, the Debt (including unpaid interest, Default Rate interest, Late Payment Charges, Yield Maintenance Premium and any other amounts owing by Borrower) shall immediately and automatically become due and payable, without notice or demand, and Borrower hereby expressly waives any such notice or demand, anything contained in any Loan Document to the contrary notwithstanding.

55.     Section 2.2.2 of the Loan Agreement provides that, ""[a]fter the occurrence and during the continuance of an Event of Default, the entire unpaid Debt shall bear interest at the Default Rate. . . ."  As defined in the Loan Agreement, the "Default Rate" means "a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law, or (ii) five percent (5%) above the Interest Rate, compounded monthly."  Accordingly, the Default Rate is 9.169%.

56.     Section 2.3.1 of the Loan Agreement provides, in relevant part, that:

If prior to the Permitted Prepayment Date the Debt is accelerated by reason of an Event of Default, then Lender shall be entitled to receive, in addition to the unpaid Principal and accrued interest and other sums due under the Loan Documents, an amount equal to the Yield Maintenance Premium applicable to such Principal so accelerated.

57.     By letter dated May 2, 2020 (the "Notice of Acceleration"), Plaintiff, through its counsel, inter alia, notified Borrower and Guarantor of, inter alia, the occurrence and continuance of Events of Default based upon, inter alia, the Payment Default, the Cash

12

Management Default, the Borrower Financial Reporting Default and the Guarantor Financial Reporting Default, and accelerated and declared the entire Indebtedness due and payable.

58.     Despite receipt of the Notice of Acceleration, Borrower and Guarantor have failed to cure the existing Events of Default and satisfy their obligations under the Loan Documents.

59.     There is now due, owing and payable to Plaintiff under the Loan Documents: (i) approximately $15,000,000.00 in principal; (ii) accrued and unpaid interest at the contract and default rates; (iii) late charges; (iv) attorneys' fees, costs and expenses; (v) the Yield Maintenance Premium; and (vi) all other sums provided for under the Loan Documents in an amount to be determined.

60.     In order to protect the lien and security represented by the Mortgage during the pendency of this action, Plaintiff may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges affecting the Property.  Plaintiff asks that any amount so paid and expended by it during the pendency of this action be added, pursuant to the Loan Documents, to its claim and, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due Plaintiff and secured by the Loan Documents.

61.     No other action or proceeding has been brought to recover any part of the Debt herein described.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.     Fixing the amount due to Plaintiff pursuant to the Loan Documents;

B.     Directing that Plaintiff be paid the amounts due pursuant to the Loan Documents, with interest, advances, other charges, attorneys' fees and costs;

13

C.      Awarding Plaintiff its costs of suit and attorneys' fees; and

D.      Granting such other relief as is equitable and just.

## SECOND COUNT
### (Appointment of a Receiver)

62.     Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 61 above, as if the same were set forth and repeated at length herein.

63.     The Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property (collectively, the "Borrower's Assets") are the sole assets of Borrower.

64.     Except for certain limited qualifications as set forth in the Loan Documents, Borrower has no personal liability for repayment of the Loan, and Plaintiff's primary recourse for repayment of the Loan is the collateral securing the Loan.

65.     The Loan Documents expressly allow Plaintiff to seek, and indicate Borrower's express consent to, the appointment of a receiver upon the occurrence of an Event of Default.

66.     Borrower and its agents are still in possession of Borrower's Assets.

67.     Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the Borrower's Assets suffering continuous waste and a dissipation or diminution in value, if Borrower remains in control of Borrower's Assets.

68.     Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Property and Borrower's Assets.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.      Appointing a receiver of the Property and Borrower's Assets;

14

B.      Directing all tenants in possession of the Properties to pay the appointed receiver all rent, income and profits;

C.      Awarding Plaintiff its costs of suit and attorneys' fees; and

D.      Granting such other relief as is equitable and just.

## THIRD COUNT
### (Breach of Contract of the Guaranty)

69.     Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 68 above, as if the same were set forth and repeated at length herein.

70.     In order to induce Original Lender to make the Loan to Borrower, Guarantor executed, acknowledged and delivered to Original Lender the Guaranty.

71.     Pursuant to the terms of the Guaranty, Guarantor irrevocably and unconditionally covenants and agrees that he is liable for the Guaranteed Obligations (as defined therein), and that Guarantor shall fully perform each and every term and provision thereof.

72.     Moreover, Guarantor agreed that, with or without notice or demand, Guarantor will reimburse Plaintiff, to the extent that such reimbursement is not made by Borrower, for all expenses (including reasonable attorney's fees) incurred by Plaintiff in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of the Guaranty.

73.     Plaintiff is the current holder of the Note, the Mortgage and the Guaranty.

74.     No other action or proceeding has been brought to recover any part of the mortgage indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against Guarantor as follows:

A.      Fixing the amount due to Plaintiff from Guarantor pursuant to the Guaranty and any other applicable Loan Documents;

15

B.      Adjudging that Plaintiff is entitled to be paid by Guarantor the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs; and

C.      Awarding Plaintiff its costs of suit and attorneys' fees; and

D.      Granting such other relief as is equitable and just.

## FOURTH COUNT
### (Accounting)

75.      Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 74 above, as if the same were set forth and repeated at length herein.

76.      As a result of the Borrower Financial Reporting Default and the Guarantor Financial Reporting Default, Borrower and Guarantor are and have been concealing the financial status and performance of the Property and themselves in direct breach of their contractual obligations under the Loan Agreement and the Guaranty, respectively, thereby leaving Plaintiff to speculate as to the status of its collateral.

77.      Plaintiff is contractually entitled to an accounting of the affairs of Borrower, Guarantor and the Property and turnover by Borrower and Guarantor of the Missing Borrower Required Records, Additional Missing Borrower Required Records, and Missing Guarantor Required Records and such similar records to which Plaintiff thereafter became contractually entitled to receive.

**WHEREFORE**, Plaintiff demands judgment against Borrower and Guarantor as follows:

A.      Adjudging that Plaintiff is entitled to an accounting of the affairs of Borrower, Guarantor and the Property and turnover by Borrower and Guarantor of the Missing Borrower Required Records, Additional Missing Borrower Required Records, and Missing Guarantor Required Records and such similar records to which Plaintiff thereafter became contractually entitled to receive.

16

B.      Compelling Borrower and Guarantor to provide an accounting of the affairs of Borrower, Guarantor and the Property and turnover by Borrower and Guarantor of the Missing Borrower Required Records, Additional Missing Borrower Required Records, and Missing Guarantor Required Records and such similar records to which Plaintiff thereafter became contractually entitled to receive.

C.      Awarding Plaintiff its costs of suit and attorneys' fees; and

D.      Granting such other relief as is equitable and just.

Dated: New York, New York
      July 10, 2020

THOMPSON & KNIGHT LLP

By: ___/s/ Keith M. Brandofino_____
     Keith M. Brandofino, Esq.
     David V. Mignardi, Esq.
     Attorneys for Plaintiff
       *Wilmington Trust, National Association,*
       *as Trustee for the Registered Holders of*
       *Wells Fargo Commercial Mortgage Trust*
       *2015-NXS2, Commercial Mortgage Pass-*
       *Through Certificates, Series 2015-NXS2, acting*
       *by and through Rialto Capital Advisors, LLC, as*
       *Special Servicer under the Pooling and*
       *Servicing Agreement dated as of July 1, 2015*
     900 Third Avenue, 20th Floor
     New York, New York 10022
     (212) 751-3001
     keith.brandofino@tklaw.com
     david.mignardi@tklaw.com

17

EXHIBIT

1

EXHIBIT A

LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Marketfield Street and the westerly side of Broad Street;

RUNNING THENCE northerly along the westerly side of Broad Street, 43 feet 8 inches;

THENCE westerly along the southerly side of Beaver Street, 64 feet 7-3/4 inches;

THENCE southerly along a line forming an interior angle of 85 degrees 26 minutes 00 seconds with the last course, a distance of 49 feet 9-1/4 inches to the northerly side of Marketfield Street;

THENCE easterly along the northerly side of Marketfield Street, 61 feet 5-1/4 inches to the point or place of BEGINNING.

Reference No.: 3407.003
Matter Name: 70 Broad Street
Pool: WFCM 2015-NXS2