UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2015-NXS2, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2015-NXS2, acting by and through Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of July 1, 2015, | Civil Action File No. 20-cv-05309-JGK  **ANSWER AND COUNTERCLAIMS**  **JURY TRIAL DEMANDED** |
| Plaintiff, | |
| v. | |
| WINTA ASSET MANAGEMENT LLC; NEW YORK CITY DEPARTMENT OF FINANCE; and SHUIGUN CHEN, | |
| Defendants. | |

Defendants Winta Asset Management LLC and Shuigun Chen (together, the "Defendants"), by and through their undersigned attorneys, hereby answer the First Amended Complaint ("Complaint") of Plaintiff Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-NXS2, Commercial Mortgage Pass-Through Certificates, Series 2015-NXS2, acting by and through Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of July 1,2015 ("Plaintiff"), as follows:

**PARTIES, JURISDICTION AND VENUE**

1.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 1.

2.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 2.

3.      Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 3.

4.      Defendants admit that "Winta Asset Management LLC ("Borrower") is a Delaware limited liability company with an address c/o 70 Broad LLC, 70 Broad Street, New York, New York 10004," that Borrower is the owner of certain real property and improvements . . . located at 70 Broad Street, New York, New York 10004, and more particularly described in Exhibit 1 annexed hereto (the "Property")," and that "70 Broad LLC, a New York limited liability company, is the sole member of Borrower and Shuigun Chen ("Guarantor") and Gui Xin Hong, both citizens of the People's Republic of China, and Winta Holding Co., Ltd., a New York corporation, are the members of 70 Broad LLC."  Defendants also state that the Property is commonly known as the "American Bank Note Building".  The remainder of the allegations set forth in Paragraph 4 set forth legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations set forth in Paragraph 4.

5.      Defendants deny knowledge for information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 5.

6.      Defendants admit that Defendant Chen is an individual and resident of the People's Republic of China, refer to the referenced Guaranty for its full and complete content, and otherwise denies the allegations set forth in Paragraph 6.

7.      Paragraph 7 sets forth a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 7.

8.      Defendants refer to the referenced "Loan Agreement" for its full and complete content, and otherwise deny the allegations set forth in Paragraph 8.

9.      Paragraph 9 sets forth a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 9.

## FACTUAL BACKGROUND

### FIRST COUNT
**(Mortgage Foreclosure)**

**A.      The Loan.**

10.      Defendants refer to the referenced Loan Agreement for its full and complete content, and otherwise deny the allegations set forth in Paragraph 10.

11.      Defendants refer to the referenced Note for its full and complete content, and otherwise deny the allegations set forth in Paragraph 11.

12.      Defendants refer to the referenced Mortgage for its full and complete content, deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that "on May 26, 2015, Original Lender recorded the Mortgage with the Office of City Register of the City of New York as City Register File Number 2015000174143, and duly paid the mortgage recording taxes," and otherwise deny the allegations set forth in Paragraph 12.

13.      Defendants refer to the referenced Mortgage for its full and complete content, and otherwise deny the allegations set forth in Paragraph 13.

14.      Defendants refer to the referenced ALR for its full and complete content, deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that "on May 26, 2015, Original Lender recorded the ALR with the City Register's Office as CRFN 2015000174144," and otherwise deny the allegations set forth in Paragraph 14.

15.      Defendants refer to the referenced County UCC-1 for its full and complete content, deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that "on May 26, 2015, Original Lender recorded a Uniform Commercial Code Financing

Statement with the City Register's Office as CRFN 2015000174145," and otherwise deny the allegations set forth in Paragraph 15.

16.     Defendants refer to the referenced State UCC-1 for its full and complete content, deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that "on April 30, 2015, Original Lender filed a Uniform Commercial Code Financing Statement with the Delaware Secretary of State ("DE SOS") as File Number 20151856037," and otherwise deny the allegations set forth in Paragraph 16.

17.     Defendants refer to the referenced Guaranty for its full and complete content, and otherwise deny the allegations set forth in Paragraph 17.

**B.     Assignment of the Loan Documents to Interim Holder.**

18.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 18.

19.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 19, except refer to the referenced Interim Assignment of Mortgage for its full and complete content.

20.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 20, except refer to the referenced Interim Assignment of ALR for its full and complete content.

21.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 21.

22.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 22.

**C.     Assignment of the Loan Documents to Plaintiff**

23.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 23, except refer to the referenced Plaintiff Allonge for its complete terms and content.

24.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 24, except refer to the referenced Plaintiff Assignment of Mortgage for its complete terms and content.

25.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 25, except refer to the referenced Plaintiff Assignment of ALR for its complete terms and content.

26.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 26, except refer to the referenced Uniform Commercial Code Financing Statement Amendment for its complete terms and content.

27.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 27, except refer to the referenced County UCC Continuation for its complete terms and content.

28.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 28, except refer to the referenced Uniform Commercial Code Financing Statement Amendment for its complete terms and content.

**D.     Borrower's Defaults Under the Loan Documents**

**i.     The Payment Default**

29.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 29.

30.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 30.

31.     Defendants refer to the referenced April Notice of Default for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 31.

32.     Defendants deny the allegations set forth in Paragraph 32.

**ii.     The Cash Management Default**

33.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 33.

34.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 34.

35.     Defendants refer to the referenced August Notice of Default for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 35.

36.     Defendants refer to the referenced March Notice of Default for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 36.

37.     Defendants deny the allegations set forth in Paragraph 37.

**iii.     The Cessation of Operation Default**

38.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 38.

39.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 39.

40.     Defendants admit the allegations set forth in Paragraph 40.

41.     Defendants admit that "at the time of the Loan's origination in April 2015, the Property was 100% occupied by 4 separate tenants," and otherwise deny the allegations set forth in Paragraph 41.

42.     Defendants deny the allegations set forth in Paragraph 42.

43.     Defendants deny the allegations set forth in Paragraph 43.

**iv.     The Borrower Financial Reporting Default**

44.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 44.

45.     Defendants refer to the referenced August Notice of Default for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 45.

46.     Defendants deny the allegations set forth in Paragraph 46.

47.     Defendants refer to the referenced March Notice of Default for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 47.

48.     Defendants deny the allegations set forth in Paragraph 48.

**v.     The Guarantor Financial Reporting Default**

49.     Defendants refer to the referenced Guaranty for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 49.

50.     Defendants refer to the referenced March Notice of Default for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 50.

51.     Defendants deny the allegations set forth in Paragraph 51.

52.     Defendants refer to the referenced April Notice of Default for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 52.

53.     Defendants deny the allegations set forth in Paragraph 53.

54.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 54.

55.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 55.

56.     Defendants refer to the referenced Loan Agreement for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 56.

57.     Defendants refer to the referenced Notice of Acceleration for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 57.

58.     Defendants deny the allegations set forth in Paragraph 58.

59.     Defendants refer to the referenced Loan Documents for their complete terms and content, and otherwise deny the allegations set forth in Paragraph 59.

60.     Defendants deny the allegations set forth in Paragraph 60.

61.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 61.

62.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 62.

**WHEREFORE,** Defendants deny that Plaintiff is entitled to the relief set forth in the *ad damnum* clause or to any relief at all.

<u>**SECOND COUNT**</u>
**(Appointment of a Receiver)**

63.     Defendants repeat and incorporate their responses to the allegations contained in Paragraphs 1 through 62 above, as if the same were set forth and repeated at length herein.

64.     Defendants admit that the "Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property" are among the sole assets of Borrower, and otherwise deny the allegations set forth in Paragraph 64.

65.     Defendants admit the allegations set forth in Paragraph 65.

66.     Defendants deny the allegations set forth in Paragraph 66.

67.     Defendants admit the allegations set forth in Paragraph 67.

68.     Defendants deny the allegations set forth in Paragraph 68.

69.     Defendants deny the allegations set forth in Paragraph 69.

**WHEREFORE,** Defendants deny that Plaintiff is entitled to the relief set forth in the *ad damnum* clause or to any relief at all.

## <u>THIRD COUNT</u>
### (Breach of Contract of the Guaranty)

70.     Defendants repeat and incorporate their responses to the allegations contained in Paragraphs 1 through 69 above, as if the same were set forth and repeated at length herein.

71.     Defendants refer to the Guaranty for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 71.

72.     Defendants refer to the Guaranty for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 72.

73.     Defendants refer to the Guaranty for its complete terms and content, and otherwise deny the allegations set forth in Paragraph 73.

74.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 74.

75.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 75.

**WHEREFORE,** Defendants deny that Plaintiff is entitled to the relief set forth in the *ad damnum* clause or to any relief at all.

### FOURTH COUNT
### (Accounting)

76.     Defendants repeat and incorporate their responses to the allegations contained in Paragraphs 1 through 75 above, as if the same were set forth and repeated at length herein.

77.     Defendants deny the allegation set forth in Paragraph 77.

78.     Defendants refer to the referenced Loan Documents for their complete terms and content, and otherwise deny the allegations set forth in Paragraph 78.

**WHEREFORE,** Defendants deny that Plaintiff is entitled to the relief set forth in the *ad damnum* clause or to any relief at all.

### GENERAL DENIAL

Except as otherwise expressly admitted above, Defendants deny each and every allegation of the Complaint, and specifically deny any wrongdoing at all.

### AFFIRMATIVE DEFENSES

Without in any way admitting any of the allegations in the Complaint, and without admitting or suggesting that Defendants bear the burden of proof on any of the following issues, Defendants allege the following separate and independent affirmative defenses:

### First Affirmative Defenses

Plaintiff's claims are barred in whole or in part for failure to state a claim.

### Second Affirmative Defense

Plaintiff's claims are barred in whole or in part by applicable statutes of limitation.

### Third Affirmative Defense

Plaintiff's claims are barred by the doctrines of waiver and estoppel.

## Fourth Affirmative Defense

Plaintiff's claims are barred or reduced to the extent any injury was caused by the acts or omissions of Plaintiff, or other or third parties, for whom Defendants are not responsible.

## Fifth Affirmative Defense

Plaintiff's claims are barred because Defendants acted reasonably and in good faith at all times.

## Sixth Affirmative Defense

Plaintiff's claims are barred by Plaintiff's, or Plaintiff's agents', representatives', consultants', or predecessors' inequitable conduct.

## Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the equitable doctrines of bad faith and unclean hands.

## Eighth Affirmative Defense

Plaintiff's claims are barred based on Plaintiff's conduct, in whole or in part, by equitable doctrines, including acquiescence, waiver, estoppel, and laches.

## Ninth Affirmative Defense

Plaintiff's claims are barred by any other matter constituting an affirmative defense on legal or equitable grounds.

## Reservation And Non-Waiver Of Additional Affirmative Defenses

Defendants reserve the right to assert and rely on, and do not waive, any additional defenses that become available or apparent during the course of this action.

## COUNTERCLAIMS

79.     Winta is the owner of the real property commonly known as the American Bank Note Company Building, located at 70 Broad Street, New York, New York (the "Property").

80.     In early 2015, Plaintiff's alleged predecessor-in-interest loaned Winta $15,000,000 (the "Loan"), which was made subject to a series of loan documents (the "Loan Documents"), including a Loan Agreement dated as of April 29, 2015 ("the Loan Agreement").

81.     Plaintiff alleges that is the assignee of the Loan Documents.[1]

82.     Prior to the onset of the COVID-19 global pandemic, Borrower timely paid all regularly scheduled monthly payments and other amounts due under the Loan Documents.

83.     Beginning in March 2020, economies began plummeting as a result of the economic crisis caused by the COVID-19 pandemic.  Federal and state governments implemented measures to contain the pandemic, including ordering in many instances all non-essential businesses to remain closed, requiring individuals to stay in their homes, and closing international borders to travel.  These measures understandably hit the commercial real estate rental and sales markets in New York City particularly hard.

84.     In view of the health and economic impacts of the pandemic, on March 20, 2020, Governor Andrew M. Cuomo announced a New York State 90-day moratorium on, among other things, commercial foreclosures for nonpayment.  Governor Cuomo extended the moratorium through June 25, 2021.  According to the Governor's office, the purpose of "this protection" was to give "commercial tenants and mortgagors additional time to get back on their feet and catch up on rent or their mortgage, or to renegotiate their lease terms to avoid foreclosure moving forward."[2]

---

[1]     For ease of understanding, Plaintiff and its alleged predecessors-in-interest under the Loan Documents shall be referred to collectively as the "Lender".

[2]     *See* Governor Cuomo Signs Executive Order Extending Moratorium On COVID-Related Commercial Evictions Through January 1, available at: https://www.governor.ny.gov/news/governor-cuomo-signs-executive-order-extending-moratorium-covid-related-commercial-evictions-0#:~:text=Governor%20Andrew%20M.%20Cuomo%20today,and%20foreclosures%20through%20January%201.&t

85.     On May 12, 2020, Plaintiff, though its counsel, notified defendants of the occurrences of alleged defaults and "Events of Defaults"[3], and that "Lender has accelerated the Maturity Date of the Loan and declared immediately due and payable the entire Debt, specifically including, without limitation, the entire outstanding principal amount of the Loan, together with all accrued and unpaid interest at the Interest Rate and at the Default Rate, all Late Payment Charges, the Yield Maintenance Premium, attorneys' fees and costs and all other amounts due under the Loan Documents (collectively, the 'Indebtedness')" [the "Acceleration"].

86.     As explained below, Plaintiff's Acceleration of the Loan Agreement was predatory, opportunistic, and improper; and the alleged Events of Default were pretextual, wrongful, and inequitable.

   *(i)     The Alleged "Payment Default"*

87.     First, Plaintiff alleges that an Event of Default occurred because Winta failed to pay the regularly scheduled monthly payment and other amounts due under the Loan Documents on April 6, 2020, the payment date for April 2020.

88.     No such default occurred.  From the time that the Loan was made until April 2020, Winta made all payments under the Loan Documents by automatic withdrawal from an account maintained at the Lender's financial institution.  Nevertheless, the Lender did not withdraw Winta's monthly payment for April 2020.  Once Winta learned that the monthly payment for April 2020 was not withdrawn, Winta made the payments under the Loan Documents for April 2020 and May 2020.

   *(ii)     The Alleged "Cash Management Default"*

---

ext=The%20commercial%20eviction%20and%20foreclosure%20moratorium%20was%20extended%20through%20August,October%2020%20by%20Executive%20Order.

[3]     Capitalized terms not otherwise defined herein refer to the definitions set forth in the Loan Documents.

89.     Second, Plaintiff alleges that an Event of Default occurred because Winta failed to "cause all Rents to be transmitted directly by the Tenants of the Property into the Clearing Account[]" and "if Borrower or Manager receive any Rents, [to] deposit such amounts into the Clearing Account within one (1) Business Day of receipt[]."

90.     No such default occurred.  Winta did, in fact, deposit all Rents that it received directly into the Clearing Account.

91.     In or about the summer of 2017, all of the tenants at the Property voluntarily vacated the Property, and no further Rents were collected from the former tenants.  Because Winta did not collect any Rents after that time, there were no Rents to deposit into the Clearing Account and, accordingly, no default under the Loan Agreement.

*(iii)    The Alleged "Cessation of Operation Default"*

92.     Third, Plaintiff alleges that an Event of Default occurred because "Winta "terminated all of the Leases identified in the Rent Roll in April 2017 without Plaintiff's knowledge and consent."

93.     No such default occurred.  Winta did not terminate any of the Leases at the Property.  Rather, the tenants who had occupied the Property vacated the Property without Winta's permission and without Winta accepting a cancellation or surrender of their Leases.  After the tenants vacated the Property, Winta promptly informed the Lender that the Property was vacant.  Winta also sought new tenants for the Property.

94.     Notwithstanding that the tenants had vacated the Property and ceased paying Rents, Winta continued making monthly payments under the Loan Documents through May 2020.

*(iv)-(v) The Alleged "Borrower Financial Reporting Default" and "Guarantor Financial Reporting Default"*

95.     Finally, Plaintiff alleges that two additional Events of Default occurred because Winta and Chen failed to provide certain financial records to the Lender.

96.     The alleged failure to provide these financial records do not comprise an Event of Default.  The records identified by Plaintiff were allegedly sought years before Plaintiff notified Winta and Chen that their purported failure to deliver the financial alleged records comprised an Event of Default.  Plaintiff elected to sit on its rights and refrain from asserting its alleged rights under the Loan Documents for years.  Then after the onset of the COVID-19 pandemic, Lender sent Plaintiff and Guarantor a notice outlining ninety-nine separate records dating back to 2015 they were required to produce within 30 days. Plaintiff's assertion of its purported rights relating to the records, prejudices Defendants, and was performed in bad faith and inequitably.

97.     The difficulties in obtaining the requested records were exacerbated by the fact that Winta's representative was, notwithstanding her repeated efforts, also barred from accessing any financial records about the Clearing Account, as Lender wrongfully contended that she was not the account holder or an authorized user.

98.     Additionally, as the tenants at the Property had vacated, and Winta informed the Lender that they had left, many of the records requested by Plaintiff did not exist (since the Property was the sole asset of Winta).

99.     To be sure, Plaintiff only notified Defendants of the purported Events of Default and the Acceleration on May 12, 2020 – in the midst of the COVID-19 pandemic, a date coming less than two months into the Governor's moratorium on commercial foreclosure evictions; and in spite of the facts that Winta never missed a payment under the Loan Agreement until the *Lender* failed to withdraw it, had alerted the Lender that its tenants had vacated the Property, had never

failed to deposit Rents into the Clearing Account, and did not otherwise commit an enforceable Event of Default under the Loan Documents.

100.     In fact, counsel for Plaintiff has even admitted that the purpose of this action was, at least in part, to send a message to Defendants and Lender's other borrowers whom it believes are "feeling emboldened" during the Covid pandemic (which it referred to as a mere "unusual situation"), and to show other borrowers that Lender will "hold their feet to the fire." *See* Green Street Commercial Mortgage Alert, dated October 23, 2020.

## AS AND FOR A FIRST COUNTERCLAIM

(Declaratory Judgment)

101.     Defendants repeat and reallege Paragraphs 78-99 as if fully set forth herein.

102.     An actual, present, and justiciable controversy has arisen between the parties having adverse legal interests concerning whether Plaintiff was entitled under the Loan Agreement to declare Events of Default and the Acceleration.

103.     Declaratory relief is necessary and appropriate because, for among other reasons, a declaratory judgment will settle the parties' controversy and clarify the parties' legal relationship.

104.     By reason of the foregoing, Defendants are entitled to a judgment declaring that Defendants are not in default under the Loan Documents, that no Events of Default have occurred under the Loan Agreement, and that the Loan Agreement shall be, and hereby is, reinstated according to its original terms as if there had been no declaration of Events of Default or the Acceleration.

## AS AND FOR A SECOND COUNTERCLAIM

(Declaratory Judgment)

105.    Defendants repeat and reallege Paragraphs 78-103 as if fully set forth herein.

106.    An actual, present, and justiciable controversy has arisen between the parties having adverse legal interests concerning whether there has been a breach of the Guaranty and whether Plaintiff is entitled to be paid any amounts by Chen pursuant to the Guaranty.

107.    Declaratory relief is necessary and appropriate because, for among other reasons, a declaratory judgment will settle the parties' controversy and clarify the parties' legal relationship.

108.    By reason of the foregoing, Defendants are entitled to a judgment declaring that there has been no breach of the Guaranty and that the Plaintiff is not entitled to be paid any sum by Chen pursuant to the Guaranty.

## AS AND FOR A THIRD COUNTERCLAIM

(Breach Of Contract)

109.    Defendants repeat and reallege Paragraphs 78-107 as if fully set forth herein.

110.    The Loan Agreement constitutes a valid and binding contract between Plaintiff and Defendants.

111.    Defendants have performed all of their obligations under the Loan Agreement.

112.    Under the terms of the Loan Agreement, Plaintiff may only accelerate the maturity date of the Loan and assess additional fees, charges, and interest rates upon the occurrence of an Event of Default.

113.    Plaintiff breached the Loan Agreement by wrongfully declaring occurrences of Events of Default and accelerating the maturity date of the Loan (and assessing additional fees, charges, and interest rates) when no such Events of Default occurred.

114.    The Loan Agreement also contains an implied covenant of good faith and fair dealing.  Plaintiff has a duty under the Loan Agreement to exercise its rights or discretion reasonably and in good faith, so as not to deprive Defendants of the fruits of the Loan Agreement.

115.    Plaintiff has exercised its powers and performed its duties under the Loan Agreement malevolently, in bad faith, and to benefit itself at the expense of Defendants by, among other things, failing to perform its obligations in good faith, failing to employ honesty and fairness, failing to consider whether Defendants' alleged defaults were attributable to events out of Defendants' control, wrongfully declaring occurrences of Events of Default, and wrongfully accelerating the maturity date of the Loan (and assessing additional fees, charges, and interest rates).

116.    By reason of the foregoing, Defendants are entitled to a judgment of specific performance Ordering that Plaintiff is required to perform its obligations under the Loan Documents, that Defendants are not in default under the Loan Documents, that no Events of Default have occurred under the Loan Agreement, and that the Loan Agreement shall be, and hereby is, reinstated according to its original terms as if there had been no declaration of Events of Default or Acceleration.

**WHEREFORE,** Defendants respectfully requests that the Court:

(a) Enter judgment according to the relief sought;

(b) Award Defendants their costs and reasonable attorneys fees in this action; and

(c) Granting Defendants such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Defendants demand a trial by jury for all issues so triable.

Date:   July 28, 2021

Respectfully submitted,

MORRISON COHEN LLP

*/s/ Latisha V. Thompson*
Y. David Scharf
Latisha V. Thompson
Daniel C. Isaacs
Anna Sun
909 Third Avenue
New York, NY 10022
Tel: (212) 735-8600

*Attorneys for Defendants*