UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

WILMINGTON TRUST, NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE          20-cv-5309 (JGK)
REGISTERED HOLDERS OF WELLS FARGO
COMMERCIAL MORTGAGE TRUST 2015-NXS2,     MEMORANDUM OPINION
COMMERCIAL MORTGAGE PASS-THROUGH             AND ORDER
CERTIFICATES, SERIES 2015-NXS2,
acting by and through Rialto Capital
Advisors, LLC, as Special Servicer
under the Pooling and Servicing
Agreement dated as of July 1, 2015,

                    Plaintiff,

        - against -

WINTA ASSET MANAGEMENT LLC, ET AL.,

                    Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:

        The plaintiff, Wilmington Trust, National Association, as

Trustee for the Registered Holders of Wells Fargo Commercial

Mortgage Trust 2015-NXS2, Commercial Mortgage Pass-Through

Certificates, Series 2015-NXS2, acting by and through Rialto

Capital Advisors, LLC, as Special Servicer under the Pooling and

Servicing Agreement dated as of July 1, 2015, commenced this

action against Winta Asset Management LLC (the "Borrower"), New

York City Department of Finance ("DOF"), and Shuigun Chen (the

"Guarantor") to foreclose a Consolidated, Amended and Restated

Mortgage, Assignment of Leases and Rents and Security Agreement

dated April 29, 2015 (the "Mortgage"), ECF No. 105-4, in the

original principal amount of $15,000,000. The Mortgage is

secured by, among other things, real property and improvements known as 70 Broad Street, New York, NY 10004 (the "Property"). See Callejas Decl., ECF No. 105 ¶ 5.

The plaintiff has brought a motion seeking the following relief: (1) an order pursuant to Federal Rule of Civil Procedure 56 granting the plaintiff summary judgment against the Borrower on counts I, II, and IV of the First Amended Complaint ("FAC"), striking the Answering Defendants' Answer, and dismissing the Answering Defendants' first and third counterclaims; (2) a default judgment pursuant to Rule 55(b)(1) against DOF on counts I, II, and IV of the FAC; (3) an order referring the calculation of the amount of the judgment of foreclose and sale to the Magistrate Judge; (4) pursuant to Rule 21, severance of count III of the FAC as against the Guarantor and the Answering Defendants' second counterclaim for later determination; and (5) any other relief the Court deems just and proper. See ECF No. 107, at 2.

For the reasons explained below, the plaintiff's motion is **granted in part and denied in part**.

                                   **I.**

By way of a loan agreement dated April 29, 2015 (the "Loan Agreement"), ECF No. 105-2, the Borrower obtained a loan of $15,000,000 (the "Loan") from Silverpeak Real Estate Finance LLC (the "Original Lender"). Callejas Decl. ¶ 6. As collateral

security for repayment of the Loan, the Borrower executed, acknowledged, and delivered to the Original Lender, among other things, the Mortgage and an Assignment of Leases and Rents dated April 29, 2015 (the "ALR"). The Mortgage granted the Original Lender a security interest in the Property, and the ALR granted the Original Lender a security interest in all Rents[1] generated from the Property. Id. ¶¶ 8-9. The Guarantor executed a Guaranty of Recourse Obligations dated April 29, 2015 (the "Guaranty"), pursuant to which the Guarantor irrevocably and unconditionally guaranteed to the Original Lender the payment and performance of certain guaranteed obligations. Id. ¶ 10. The plaintiff argues that, by virtue of, among other things, a series of allonges[2] to the Note,[3] assignments of the Mortgage, and assignments of the ALR, the plaintiff became and currently is the holder and owner of the Loan Documents.[4] See, e.g., ECF No. 107, at 4; Callejas Decl. ¶¶ 11-12. The Borrower and the Guarantor (together, the "Answering Defendants") argue that the plaintiff has not

---

[1] The term "Rents" is defined in the Loan Agreement. See ECF No. 105-2, at 12.

[2] "An allonge is a document attached to a negotiable instrument to provide space for additional endorsements when the original document no longer has room for endorsements." Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs., LLC, No. 16-cv-9112, 2018 WL 4373996, at *1 n.2 (S.D.N.Y. Sept. 12, 2018).

[3] The "Note" refers to the Consolidated, Amended and Restated Promissory Note dated April 29, 2015, in the original principal amount of $15,000,000, that the Borrower executed and delivered to the Original Lender. Callejas Decl. ¶ 7.

[4] The "Loan Documents" refer to the Note, the Mortgage, the ALR, the Loan Agreement, the Guaranty, and all other documents executed in connection with the Loan. Callejas Decl. ¶ 11.

produced sufficient evidence to demonstrate that it is the lawful holder of the Note. <u>See</u> ECF No. 120, at 3.

The plaintiff argues that the Answering Defendants are in default of their obligations under the Loan Documents as a result of, among other things, the following events of default: (1) the Borrower's continued failure to remit the Monthly Debt Service Payment[5] on the April 2020 Monthly Payment Date and each Monthly Payment Date thereafter (the "Payment Default"); (2) the Borrower's continued failure to uphold the Cash Management Obligations[6] for ten days after notice (the "Cash Management Default"); (3) the Borrower's undertaking of activities other than the continuance of its present business, as well as its cessation of operations of the Property as a mixed use office and residential property (the "Cessation of Operations Default"); (4) the Borrower's continued failure to deliver the Missing Borrower Required Records[7] for thirty days after notice

---

[5] The "Monthly Debt Service Payment Amount" is defined in Section 2.2.1 of the Loan Agreement. <u>See</u> ECF No. 105-2, at 17.

[6] The "Cash Management Obligations" refer to the obligations set forth in Section 3.1 of the Loan Agreement, which provides that the Borrower is obliged to, among other things, "cause all Rents to be transmitted directly by the Tenants of the Property into [the Clearing Account]" and, "if Borrower or Manager receive any Rents," then "Borrower or Manager shall deposit such amounts into the Clearing Account within one (1) Business Day of receipt." Callejas Decl. ¶ 18; Loan Agreement, at 22.

[7] The "Missing Borrower Required Records" refer to certain records that the Borrower was obliged to provide to the plaintiff pursuant to Sections 6.32 and 6.33 of the Loan Agreement: namely, quarterly reporting for 2017, 2018, First Quarter of 2019, Second Quarter of 2019, and Year End Annual Reports for 2017 and 2018. Callejas Decl. ¶ 30; Loan Agreement, at 55-56.

(the "Borrower Financial Reporting Default"); and (5) the Guarantor's continued failure to deliver the Missing Guarantor Required Records[8] for thirty days after notice (the "Guarantor Financial Reporting Default").

This action was commenced on July 10, 2020 by the plaintiff's filing a complaint against the Answering Defendants. ECF No. 1. On September 28, 2020, the Court appointed Ian v. Lagowitz as the Temporary Receiver of the Borrower's Assets,[9] including the Property. See ECF Nos. 41-42. With leave of the Court, the plaintiff filed the FAC on February 1, 2021. ECF No. 57. In the FAC, the plaintiff named DOF as an additional defendant. The plaintiff effectuated service of process upon DOF on February 16, 2021. ECF No. 66. DOF never answered or responded to the FAC. Brandofino Decl., ECF No. 104 ¶ 9. On October 13, 2021, the Clerk of this Court issued a certificate of default against DOF. ECF No. 94.

In a Memorandum Opinion and Order dated July 13, 2021, the Court denied the Answering Defendants' motion to dismiss. ECF No. 80. On July 28, 2021, the Answering Defendants filed their Answer to the FAC, asserting nine affirmative defenses and three

---

[8] The "Missing Guarantor Required Records" refer to the Guarantor's tax return, together with certain certifications and certificates, that the Guarantor was required to provide the plaintiff pursuant to Section 4 of the Guaranty. Callejas Decl. ¶ 35; Guaranty, ECF No. 105-6, at 3.

[9] The "Borrower's Assets" are defined in the Order Appointing Receiver, ECF No. 42, at 2-4.

counterclaims. ECF No. 81. On August 13, 2021, the plaintiff filed a reply to the Answering Defendants' counterclaims. ECF No. 82. On July 6, 2021, the plaintiff filed a notice of pendency against the Property with the New York County Clerk's Office. Brandofino Decl. ¶ 13; ECF No. 104-11.

## II.

At the outset, the Answering Defendants argue that the Court lacks subject matter jurisdiction over this case. The plaintiff asserts that the Court's basis for subject matter jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332. The Answering Defendants argue that there is not complete diversity of citizenship in this case because DOF is an "arm of the state" and a state is not a citizen for purposes of diversity jurisdiction. See RL 900 Park, LLC v. Ender, No. 18-cv-12121, 2021 WL 738705, at *7 (S.D.N.Y. Feb. 25, 2021).[10]

Whether DOF is an arm of the state "is a fact-intensive question turning on the factors laid out in Moor." Id. (citing Moor v. Alameda Cnty., 411 U.S. 693, 719 (1973)).[11] The Second Circuit Court of Appeals has noted that the question of whether

---

[10] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

[11] Among the factors the Court considered in Moor are: whether the entity at issue has corporate powers, whether it can sue and be sued, whether it is a local public entity in contrast to the state and state agencies, whether it is liable for judgments against it, and whether it can sell, hold, or deal in property. See 411 U.S. at 719-20.

an agency can be considered a citizen for purposes of diversity jurisdiction depends on "the level of autonomy enjoyed by the agency." World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 162 (2d Cir. 2003), abrogated on other grounds by Wachovia Bank v. Schmidt, 546 U.S. 303 (2006). An agency with more autonomy is more likely to be considered an entity separate from the state. See id. Courts also look to how similar an agency is to a corporation: if an agency is "sufficiently corporation-like," then "the definition of corporate citizenship under 28 U.S.C. § 1332(c) becomes applicable, and the entity will have its own separate citizenship." Eastern Sav. Bank v. Walker, 775 F. Supp. 2d 565, 568 (E.D.N.Y. 2011).

    While there is no binding precedent determining the citizenship of DOF, "Courts in this Circuit regularly hold that they have diversity jurisdiction even when [DOF] is a party." RL 900 Park, 2021 WL 738705, at *7 (collecting cases). Some courts have explicitly held that DOF is a citizen of New York. See, e.g., SAC Fund II 0826, LLC v. Burnell's Enters., Inc., No. 18-cv-3504, 2019 WL 5694078, at *4 (E.D.N.Y. Sept. 7, 2019), report and recommendation adopted, 2019 WL 5956526 (E.D.N.Y. Nov. 13, 2019). Courts have also concluded that other New York City agencies – to the extent they are suable entities - are New York citizens because they are agents of the City of New York, which

is itself a municipal corporation and a New York citizen for
purposes of diversity jurisdiction. <u>See</u> <u>Gray v. Internal Affs.</u>
<u>Bureau</u>, 292 F. Supp. 2d 475, 477 n.1 (S.D.N.Y. 2003); <u>Eastern</u>
<u>Sav. Bank</u>, 775 F. Supp. 2d at 567 n.1.

DOF is plainly an agent of the City of New York. According
to its website, DOF is "the central nervous system of New York
City government." NYC Department of Finance, About,
https://www1.nyc.gov/site/finance/about/about-us.page (last
visited July 8, 2022). DOF, among other things, collects revenue
for the City, manages the City's treasury, administers the
City's tax laws, adjudicates and collects parking tickets, and
acts as the City's chief civil law enforcer. <u>See</u> <u>id.</u> Moreover,
New York law expressly provides that DOF can be sued in cases
such as this one that affect real property: "'any department,
bureau, board, commission, officer, agency or instrumentality'
of a city may be named a defendant in an action affecting real
property." <u>Eastern Sav. Bank</u>, 775 F. Supp. 2d at 567 n.1.
(quoting N.Y. Real Property Actions and Proceedings Law
("RPAPL") 202-a).[12] DOF is therefore a "local public entity,"

---

[12] "New York City agencies are generally not amenable to suit 'except where
otherwise provided by law.' N.Y.C. Charter § 396. Section 202-a of RPAPL,
however, expressly contemplates city agencies being named as defendants in
actions affecting real property." <u>Miss Jones, LLC v. Brahmadutta Bisram, Y &
S Dev. of NY, Inc.</u>, No. 16-cv-7020, 2018 WL 2074200, at *3 n.2 (E.D.N.Y. Feb.
5, 2018), <u>report and recommendation adopted</u>, 2018 WL 2074205 (E.D.N.Y. Feb.
22, 2018). Accordingly, DOF is a suable entity in this action. <u>But see</u> <u>SAC
Fund II</u>, 2019 WL 5694078, at *4 n.6 (concluding that DOF is not a suable
entity).

<u>Moor</u>, 411 U.S. at 719, and is sufficiently independent from the State of New York to be considered a citizen for purposes of diversity jurisdiction, <u>see</u> <u>World Trade Ctr. Props.</u>, 345 F.3d at 162 (finding that the Port Authority is a citizen of New York and New Jersey).[13]

Accordingly, there is complete diversity of citizenship among the parties and the Court has subject matter jurisdiction over this action.[14]

**III.**

The plaintiff has moved for summary judgment against the Borrower on counts I, II, and IV of the FAC. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v.

---

[13] While the court in <u>RL 900 Park</u>, 2021 WL 738705, at *7, concluded that it lacked diversity jurisdiction, that case is readily distinguishable. There, the plaintiff – despite being prompted by the court for more details – "made no attempt to show that [DOF] is a citizen of New York beyond the conclusory pleading in the Amended Complaint." <u>Id.</u> Here, by contrast, the plaintiff pointed to facts and law sufficient to establish that DOF is, for purposes of this case, a citizen of New York.

[14] It is undisputed that the plaintiff is a citizen of Delaware, Borrower is a citizen of the People's Republic of China and New York, and Guarantor is a citizen of the People's Republic of China. The amount in controversy exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a).

Catrett, 477 U.S. 317, 323 (1986). At the summary judgment stage, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The parties agree that the substantive law of New York governs this action.

## A.

The plaintiff seeks summary judgment against the Borrower on counts I, II, and IV of the FAC. Count I seeks a judgment of foreclosure.

> In a foreclosure action, under New York law, a plaintiff establishes its prima facie entitlement to summary judgment by producing evidence of the mortgage, the note, and the defendant's default. Where . . . the defendant contests standing to foreclose, the plaintiff must prove its standing as part of its prima facie showing. A plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.

Gustavia Home, LLC v. Rutty, 785 F. App'x 11, 14 (2d Cir. 2019). "The lender is entitled to summary judgment if it establishes by documentary evidence the facts underlying its cause of action and the absence of a triable fact." U.S. Bank, N.A. v. Squadron VCD, LLC, 504 F. App'x 30, 32 (2d Cir. 2012).

The plaintiff has set forth facts establishing the
Mortgage, the Note, and the Borrower's default. The plaintiff
has produced documentary evidence establishing that: (1) the
Borrower executed the Note in favor of the Original Lender,
Callejas Decl. ¶ 7; ECF No. 105-3; (2) the Original Lender
advanced the Loan to the Borrower pursuant to the terms of the
Loan Agreement and the Note, Callejas Decl. ¶¶ 6-7; ECF Nos.
105-2, 105-3; (3) as collateral security for the payment of the
Loan, the Borrower executed, acknowledged, and delivered the
Mortgage to the Original Lender, Callejas Decl. ¶ 8; ECF No.
105-4; (4) the plaintiff is the assignee of the Note by virtue
of assignments of the Mortgage, which reference the transfer of
the Mortgage together with the Note, Callejas Decl. ¶ 11; ECF
Nos. 105-7, 105-8, 105-9, 105-10; and (5) the Borrower is in
default of its obligations under the Loan Documents because at
least two events of default occurred, see Callejas Decl. ¶¶ 14-
17, 23-29.

**1.**

The Answering Defendants seek to challenge the plaintiff's
standing to foreclose by arguing that the plaintiff is not the
lawful holder of the Note. See ECF No. 120, at 3. The plaintiff
argues that the Answering Defendants waived their standing
challenge by failing to raise it in the Answer or the pre-answer
motion to dismiss. See ECF No. 122, at 2. The plaintiff is

correct that the Answering Defendants did not raise the issue of standing in the Answer or pre-answer motion to dismiss. Moreover, courts applying New York law have consistently held that, in a mortgage foreclosure action, "where the defendant fails to affirmatively state the defense of lack of standing in the answer or in a pre-answer motion to dismiss, the issue is waived." US Bank Nat'l Ass'n v. Nelson, 93 N.Y.S.3d 138, 144 (App. Div. 2019); see also Wells Fargo Bank Minn., Nat'l Ass'n v. Mastropaolo, 837 N.Y.S.2d 247, 250-51 (App. Div. 2007).[15] Because the Answering Defendants did not raise the issue of the plaintiff's standing to foreclose in their Answer or the pre-answer motion to dismiss, the Answering Defendants waived their standing challenge.[16]

---

[15] The New York legislature enacted RPAPL 1302-a in December 2019. That statute provides:

> Notwithstanding the provisions of [CPLR 3211(e)], any objection or defense based on the plaintiff's lack of standing in a foreclosure proceeding related to a home loan, as defined in [RPAPL 1304(6)(a)], shall not be waived if a defendant fails to raise the objection or defense in a responsive pleading or pre-answer motion to dismiss. A defendant may not raise an objection or defense of lack of standing following a foreclosure sale, however, unless the judgment of foreclosure and sale was issued upon defendant's default.

However, because this statute only applies to residential mortgage foreclosure actions involving a "home loan" as defined in RPAPL 1304(6)(a), see GMAC Mortg., LLC v. Winsome Coombs, 136 N.Y.S.3d 439, 448 (App. Div. 2020), the statute does not affect this case.

[16] At argument, the Answering Defendants argued that they did not waive their standing challenge because they did not possess evidence concerning how the allonges are affixed to the Note until after filing their Answer and motion to dismiss. The plaintiff pointed out that the Answering Defendants in fact possessed this evidence as early as July 2020 (more than six months before the Answering Defendants filed their motion to dismiss and one year before

In any event, the Answering Defendants' standing challenge fails on the merits. The Answering Defendants argue that the plaintiff has failed to prove that the plaintiff was the lawful holder of the Note when this action was commenced because the plaintiff failed to comply with NY UCC § 3-202(2), which "provides that when an indorsement is written on a separate piece of paper from a note, the paper must be 'so firmly affixed thereto as to become a part thereof.'" U.S. Bank NA as Trustee of Holders of the J.P. Morgan Mortg. Trust 2007-S3 Mortg. Pass-Through Certificates v. Cannella, 99 N.Y.S.3d 579, 586 (Sup. Ct. 2019) (emphasis omitted) (quoting UCC § 3-202(2)). Courts have held that summary judgment of foreclosure is inappropriate where the plaintiff does "not submit any evidence to establish that the purported allonge was so firmly affixed to the note as to become a part thereof." Wells Fargo Bank, N.A. v. Maleno-Fowler, 144 N.Y.S.3d 618, 619 (App. Div. 2021); see also Nationstar Mortg., LLC v. Calomarde, 158 N.Y.S.3d 593, 595 (App. Div. 2022). The plaintiff does not respond to this argument in reply. In this case, as in Cannella, 99 N.Y.S.3d at 592, the plaintiff states only that the proffered allonges are "affixed" to the Note. ECF No. 107, at 7; see also Callejas Decl. ¶ 11 (referring to "a series of allonges to the Note"). Because the plaintiff

---

the Answering Defendants answered). See ECF No. 12 ¶ 7; ECF No. 12-2 (copy of the Note together with the allonges).

does not provide evidence establishing <u>how</u> the allonges are affixed to the Note, it is not clear that the allonges are affixed firmly enough to the Note to satisfy UCC § 3-202(2). <u>See Cannella</u>, 99 N.Y.S.3d at 592.[17] Accordingly, it is disputed whether the plaintiff was the lawful holder of the Note at the time this action was commenced.

However, to establish standing to foreclose, the plaintiff need only prove that "it was <u>either</u> the holder <u>or</u> assignee of the underlying note" when the action was commenced. <u>Gustavia Home</u>, 785 F. App'x at 14 (emphasis added); <u>see also</u> <u>OneWest Bank, N.A. v. Melina</u>, 827 F.3d 214, 222 (2d Cir. 2016) ("Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident."); <u>Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs., LLC</u>, No. 16-cv-9112, 2018 WL 4373996, at *7 (S.D.N.Y. Sept. 12, 2018) ("Even if Plaintiff could not establish its prima facie case via physical possession, it can establish its prima facie case based on written assignment."). The plaintiff has produced documentary evidence demonstrating that the plaintiff is the assignee of the

---

[17] For example, it is possible that the allonges are affixed to the Note by a paper clip, a method that courts have found insufficient to satisfy UCC § 3-202(2). <u>See</u> <u>Cannella</u>, 99 N.Y.S.3d at 588, 592.

Note by virtue of assignments of the Mortgage, which reference the underlying Note. See Callejas Decl. ¶ 11; ECF Nos. 105-7, 105-8, 105-9, 105-10. The Answering Defendants do not address the plaintiff's argument that the plaintiff is the assignee of the Note. "No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." 390 Park Ave. Assocs., 2018 WL 4373996, at *7. Courts have held that a mortgage assignment referencing the transfer of the mortgage "together with the notes and bonds or obligations described in the Mortgage" is "sufficient to assign both the Mortgage and underlying Note." Id. In this case, the assignments of the Mortgage contain clear references to the Note. See ECF No. 105-7, at 5 of 11; ECF No. 105-8, at 4 of 9; ECF No. 105-9, at 5 of 9; ECF No. 105-10, at 5 of 7. Accordingly, the plaintiff has established that it is the assignee of the Note.

In sum, on the issue of standing, (1) the Answering Defendants waived their standing challenge, and (2) in any event, the Answering Defendants' standing challenge fails on the merits because the plaintiff has demonstrated that it is the assignee of the Note. Therefore the plaintiff has established its prima facie entitlement to summary judgment of foreclosure.

**2.**

"If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to demonstrate the existence of a triable issue of fact as to a bona fide defense to the action, such as waiver, estoppel, bad faith, fraud, or oppressive or unconscionable conduct on the part of the plaintiff." Gustavia Home, 785 F. App'x at 14. The Answering Defendants argue that summary judgment of foreclosure is inappropriate because there are issues of material fact relating to each default alleged by the plaintiff. See ECF No. 120, at 6–12. If the plaintiff establishes that any one of the alleged events of default occurred, then it is entitled to summary judgment.

The Answering Defendants argue that the Payment Default is disputed because the parties established a course of dealing whereby the plaintiff would withdraw monthly payments from the Borrower's bank account. The Answering Defendants argue that the plaintiff inexplicably discontinued this course of dealing in April 2020. Section 2.2.1 of the Loan Agreement makes clear that the Borrower must remit the Monthly Debt Service Payment on each Payment Date. ECF No. 105–2, at 17. Section 8.1(a) of the Loan Agreement provides that an Event of Default shall occur if, among other things, "any portion of the Debt is not paid when due." Id. at 64. The Answering Defendants' course of dealing

16

argument fails because (1) no provision of the Loan Agreement could be modified absent a writing signed by the party against whom enforcement is sought, see id. at 79; and (2) any course of dealing would not have existed after May 2020,[18] and the Borrower's failure to remit the Monthly Debt Service Payment is continuing, see Callejas Decl. ¶¶ 16-17. Finally, even if the Borrower eventually made payments for the months of April and May 2020, as the Answering Defendants claim, that would not cure the Payment Default because that default is continuing. Accordingly, the Payment Default is undisputed.

The Answering Defendants also dispute the Cessation of Operations Default. See ECF No. 120, at 9-11. Section 5.15 of the Loan Agreement provides that "Borrower shall not . . . undertake or participate in activities other than the continuance of its present business or otherwise cease to operate the Property as a mixed use office and residential property . . . ." ECF No. 105-2, at 45. Section 8.1(h) provides that an Event of Default shall occur if, among other things, the Borrower breaches any covenant contained in Section 5.15. Id. at 64. The Rent Roll attached to the Loan Agreement demonstrates that, when the Loan Agreement was signed in April 2015, the

---

[18] Any course of dealing would not have existed after May 2020 because the plaintiff did not make a withdrawal from the Borrower's bank account in April 2020 or thereafter, and because the plaintiff sent the Borrower a notice of default on April 14, 2020 regarding, among other things, the Payment Default, see ECF No. 105-11.

Property was fully occupied by four tenants. Callejas Decl.
¶ 25; ECF No. 105-2, at Schedule 3. However, the Property has
been vacant since April 2017. Callejas Decl. ¶ 26. The Answering
Defendants respond by arguing that they diligently attempted to
re-let the Property. The only evidence the Answering Defendants
offer in support of this argument is a listing agreement the
Answering Defendants entered into with Cushman & Wakefield to
re-let the Property. See ECF No. 119-8. But the Answering
Defendants do not provide any evidence of any efforts made by
Cushman & Wakefield or anyone else to re-let the Property.
Moreover, the term of the proffered listing agreement expired in
May 2018, id., at 2 of 5, and therefore the agreement does
nothing to undercut the existence of the Cessation of Operations
Default after May 2018. Accordingly, the Cessation of Operations
Default is undisputed.

The Court need not consider the remaining alleged events of
default at this stage because the plaintiff has established
conclusively that at least two events of default occurred.

The Answering Defendants asserted nine affirmative defenses
in the Answer, and the plaintiff specifically addressed and
moved to strike those affirmative defenses in the plaintiff's
motion for summary judgment. But the Answering Defendants waived
those affirmative defenses by not raising them in opposition to
the plaintiff's motion for summary judgment. See Triodetic Inc.

v. Statue of Liberty IV, LLC, 582 F. App'x 39, 40 (2d Cir.
2014); Palmieri v. Lynch, 392 F.3d 73, 87 (2d Cir. 2004); Fed.
Nat'l Mortg. Ass'n v. Karastamatis, 36 N.Y.S.3d 360, 362 (Sup.
Ct. 2016). Accordingly, the Answering Defendants have failed to
demonstrate a triable issue of fact as to a bona fide defense to
the plaintiff's foreclosure claim, and the plaintiff is entitled
to summary judgment of foreclosure. See Gustavia Home, 785 F.
App'x at 14.[19] Because the plaintiff is entitled to summary
judgment of foreclosure, the Answering Defendants' first and
third counterclaims, which both seek a judgment that the
Answering Defendants are not in default, see Answer, at 16, 18,
fail as a matter of law. The plaintiff's motion to dismiss the

---

[19] The Answering Defendants argue that the Court should deny summary judgment
because any issues relating to credibility should be determined by a fact-
finder at trial. ECF No. 120, at 17. This argument fails because the
plaintiff has demonstrated its entitlement to summary judgment of foreclosure
by relying on documentary evidence that does not raise issues of credibility.
The Answering Defendants also argue that the Court should invoke its
equitable authority to "consider the alleged damages suffered (if any) by
bondholders of this CMBS trust before permitting foreclosure." Id. at 17–18
(capitalizations omitted). The Answering Defendants appear to argue that,
because there is no evidence that the bondholders of the plaintiff trust have
suffered losses, this action was brought solely to benefit the special
servicer, Rialto Capital Advisors, LLC. "A court's resort to equity to deny
the remedy of foreclosure is . . . limited to cases wherein there is clear
and convincing evidence of fraud, exploitive overreaching or unconscionable
conduct on the part of the obligee to exploit an inadvertent,
inconsequential, technical, non-prejudicial default by the mortgagor."
Deutsche Bank Nat'l Trust Co. v. Pascarella, 971 N.Y.S.2d 70, 2013 WL
2129149, at *5 (Sup. Ct. 2013). The Answering Defendants cite no authority
supporting the proposition that the Court should deny the remedy of
foreclosure in cases that are brought to benefit the special servicer.
Accordingly, there is no justifiable reason to deny the plaintiff the
foreclosure remedy to which it is entitled.

Answering Defendants' first and third counterclaims is therefore **granted.**

**B.**

The plaintiff also moves for summary judgment on counts II and IV of the FAC, which seek the appointment of a receiver and an accounting, respectively. However, the plaintiff failed to set out the legal standards applicable to these claims and explain why those standards are satisfied in this case. Accordingly, the plaintiff's motion for summary judgment on counts II and IV of the FAC is **denied without prejudice.** The plaintiff may make another motion for summary judgment explaining why the plaintiff is entitled to summary judgment on these claims.

**IV.**

The plaintiff also moves for a default judgment against DOF. Pursuant to the Court's Individual Practice VII, the plaintiff must move for a default judgment by order to show cause. Accordingly, this portion of the plaintiff's motion is also **denied without prejudice.** The plaintiff should consult the Court's Individual Practices regarding the contents of the proposed order to show cause.

The plaintiff also moves for severance of count III of the FAC and the Answering Defendants' second counterclaim for later determination in the event a future auction of the Property

20

results in a deficiency. This portion of the plaintiff's motion
is unopposed. In any event, the Court concludes that these
claims – which concern the alleged breach of the Guaranty -
should be severed for later determination. "The court may . . .
sever any claim against a party." Fed. R. Civ. P. 21. "[T]he
decision whether to grant a severance motion is committed to the
sound discretion of the trial court." In re Merrill Lynch & Co.,
Inc. Rsch. Reps. Sec. Litig., 214 F.R.D. 152, 155 (S.D.N.Y.
2003). In determining whether to sever a claim, courts should
consider, among other things, whether severance would facilitate
judicial economy or avoid prejudice. See id. at 154–55. In this
case, severance of count III of the FAC and the Answering
Defendants' second counterclaim will allow the foreclosure to
proceed without unnecessary delay. Moreover, any deficiency
claims could be rendered moot depending on the results of the
foreclosure sale. Accordingly, the plaintiff's motion for
severance of count III of the FAC and the Answering Defendants'
second counterclaim for later determination is **granted**.

## CONCLUSION

The Court has considered all of the arguments raised by the
parties. To the extent not specifically addressed above, the
arguments are either moot or without merit. For the reasons
explained above, the plaintiff's motion for summary judgment and
other relief is **granted in part and denied in part**. The

plaintiff's motion for summary judgment of foreclosure pursuant to count I is **granted.** The plaintiff's motion to dismiss the Answering Defendants' first and third counterclaims is **granted.** The plaintiff's motion to sever count III of the FAC and the Answering Defendants' second counterclaim for later determination is also **granted.** The plaintiff's motion for summary judgment on counts II and IV of the FAC, and the plaintiff's motion for a default judgment against DOF, are **denied without prejudice.**

The plaintiff should file a proposed order to show cause for a default judgment against DOF by July 25, 2022. If the plaintiff seeks a judgment of foreclosure before all claims are decided pursuant to Rule 54(b), then the plaintiff may present the Court with a proposed judgment of foreclosure or seek a reference to the Magistrate Judge for an inquest as to the proper judgment. The Clerk is directed to close Docket No. 103.

**SO ORDERED.**

**Dated:    New York, New York**
**          July 8, 2022**

**John G. Koeltl**
**United States District Judge**