**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

────────────────────────────────

**WILMINGTON TRUST, NATIONAL**
**ASSOCIATION,**

                  **Plaintiff,**

      **- against -**

**WINTA ASSET MANAGEMENT LLC, ET AL.,**

                **Defendants.**

────────────────────────────────

      **20-cv-5309 (JGK)**

      <u>**MEMORANDUM OPINION AND**</u>
      <u>**ORDER**</u>

**JOHN G. KOELTL, District Judge:**

    The Court has received the Report and Recommendation by Magistrate Judge Valerie Figueredo, dated December 21, 2023, which recommends that this Court enter the Order & Judgment submitted by the plaintiff at ECF No. 241, with several modifications to the calculations for interest and other monetary awards. <u>See</u> Report and Recommendation at 23, ECF No. 242 ("R&R"). Additionally, the Magistrate Judge recommends an award of attorney's fees in the amount of $5,110.56 and an award of costs in the amount of $5,891.07. <u>Id.</u> Finally, the Magistrate Judge recommended the appointment of Ian V. Lagowitz as referee for the sale of the property. <u>Id.</u> at 5, 23.

    The Court reviews <u>de novo</u> each of the elements of the Report and Recommendation to which an objection has been filed. <u>See</u> 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). The Court may adopt those portions of the Report and Recommendation "to which no specific, written objection is made, as long as the

1

factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous."[1] <u>United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.</u>, 603 F. Supp. 3d 77, 83 (S.D.N.Y. 2022) (citing Fed. R. Civ. P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985)). There are no portions of the Report that were not objected to that are clearly erroneous.[2]

The Court -- after carefully considering the thorough Report and Recommendation and the objections of Defendant Winta Asset Management LLC ("Winta," or "the defendant") -- concludes that the objections have no merit and the Report and Recommendation, on <u>de novo</u> review, is amply supported. The Court therefore adopts the Report and Recommendation in its entirety.

**I.**

In this case, the plaintiff, Wilmington Trust, National Association, as trustee for the registered holders of Wells Fargo Commercial Mortgage Trust 2015-NXS2, Commercial Mortgage Pass-Through Certificates, Series 2015-NXS2, acting by and

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.
[2] The plaintiffs argue that this Court should review the Report and Recommendation for "clear error" and not apply a <u>de novo</u> standard of review. <u>See</u> Pl.'s Reply at 1-3, ECF No. 246. While that may be true when a party "makes only conclusory or general objections, or simply reiterates . . . original arguments," <u>Piligian v. Ichan Sch. of Med. at Mt. Sinai</u>, 490 F. Supp. 3d 707, 715 (S.D.N.Y. 2020), in this case Defendant Winta Asset Management LLC objected to specific portions of the Report and Recommendation and argued that specific conclusions of the Magistrate Judge were incorrect. Therefore, the Court should review those portions of the Report and Recommendation <u>de novo</u>.

through Rialto Capital Advisors, LLC, under the Pooling and
Servicing Agreement dated as of July 1, 2015, filed a motion for
a final judgment of foreclosure pursuant to Federal Rule of
Civil Procedure 54(b) in favor of the plaintiff and against
Winta Asset Management LLC and Shuigun Chen ("the defendants").
ECF No. 147.

   As part of its motion, the plaintiff sought computation of
the amounts owed to it, which the Magistrate Judge recommends as
follows: (1) unpaid principal on the loan of $15,000,000; (2)
accumulated interest of $1,853,467.92 at the non-default rate of
4.169%; (3) accumulated interest of $6,447,188.63 at the default
rate of 9.169%, beginning on June 1, 2018, through February 6,
2023; (4) $7,622.11 in late fees; (5) $122,500 in special
servicing fees; (6) $1,357,834.89 in taxes and insurance
advances; (7) $426,578.19 in property protective advances; (8)
$1,200 in payoff processing fees; (9) $85.23 in UCC filing fees;
(10) $150,000 in a yield maintenance premium; and (11)
$249,410.61 in interest on advances. See R&R at 23.
Additionally, the Magistrate Judge recommends an award of
attorney's fees in the amount of $5,110.56, which represents the
difference between the total amount of attorney's fees the
Magistrate Judge recommended that the plaintiff should be
awarded ($378,623.86) and the attorney's fees the plaintiff paid
and included in the amount of "Property Protective Advances"

3

sought ($373,513.30). <u>See</u> <u>id.</u> The Magistrate Judge also recommended an award of costs in the amount of $5,891.07. <u>See</u> <u>id.</u> Finally, the Magistrate Judge recommended the appointment of the plaintiff's proposed referee, Ian V. Lagowitz, for the purposes of accomplishing the sale of the property. <u>See</u> <u>id.</u> at 5, 23.

Defendant Winta objects to the Magistrate Judge's recommendations on three grounds. First, it argues that the default rate that the Magistrate Judge used to calculate the accumulated interest between June 1, 2018, and February 6, 2023, is "tantamount to a penalty and should have been disallowed . . . ." Def.'s Obj. to R&R at 1, ECF No. 245. Second, the defendant argues that the calculations of the plaintiff's award of attorney's fees relies on insufficient evidence and should therefore be reduced. <u>See</u> <u>id.</u> at 1-2. Finally, the defendant objects to the Magistrate Judge's recommended award of several "protective advances" because the plaintiff "failed to include any documentary evidence" in support of these advances. <u>Id.</u> at 2. Each of these objections is considered in turn.

## II.

### A.

The defendant objects to the Magistrate Judge's calculation of default interest -- the amount allowed under the loan

4

documents for additional interest after an event of default. See
Declaration of Javier Callejas ("Callejas Decl."), Ex. 1,
§ 2.2.2, ECF No. 12-1. In this case, there was an event of
default in May 2018 because the defendants misrepresented
building occupancy to the plaintiff and provided fictitious rent
rolls. See R&R at 9. This constituted a default, see id., though
not a payment default because the defendants continued paying
the amount due under the loan despite their misrepresentations.
The default interest rate of 5% was therefore triggered, which,
combined with the 4.169% non-default rate, resulted in a 9.169%
combined rate. See Pl.'s Reply at 6.

The defendant makes three objections to the default
interest calculation. First, it argues that the Magistrate Judge
should not have applied the default rate at all, or should have
reduced it significantly, because it constitutes a penalty. See
Def.'s Obj. to R&R at 4. However, the Magistrate Judge is
correct in finding that the default rate is not a penalty
because it is not usurious. See R&R at 10. The rate in this case
is "well below" the 25% usury cap under New York law. See id.;
see also Blue Citi, LLC v. 5Barz Int'l Inc., 338 F. Supp. 3d
326, 334 (S.D.N.Y. 2018) ("Under New York law, a contract is
criminally usurious if the parties to the agreement knowingly
provide for an interest rate of 25 percent per annum or more."),
aff'd, 802 F. App'x 28 (2d Cir. 2020) (summary order). In any

event, "New York usury laws do not apply to defaulted obligations" like the ones at issue here. See Prowley v. Hemar Ins. Corp. of Am., 05-cv-981, 2010 WL 1848222, at *4 (S.D.N.Y. May 7, 2010).

Moreover, the default interest rate does not constitute a penalty under established law. See, e.g., Jamaica Sav. Bank, F.S.B. v. Ascot Owners, 665 N.Y.S.2d 858, 858 (App. Div. 1997) ("It is well settled that an agreement to pay interest at a higher rate in the event of a default or maturity is an agreement to pay interest and not a penalty . . . ."); see also Key Int'l Mfg. v. Stillman, 480 N.Y.S.2d 528, 531 (App. Div. 1984) ("Payment in accordance with contractual terms, in and of itself, does not constitute an injustice."). Sophisticated parties agreed to the rate as part of the loan agreement. See In re 785 Partners LLC, 470 B.R. 126, 131 (Bankr. S.D.N.Y. 2012) (noting that "[a] higher default interest rate reflects the allocation of risk as part of the bargain struck between the parties"). Indeed, New York courts have approved similar provisions in other loan agreements. See, e.g., In re Heavey, 608 B.R. 341, 348-49 (Bankr. E.D.N.Y. 2019) ("[B]ankruptcy courts have routinely held that, under New York law, default rates of interest as high as 24% are not void"); In re Campbell, 513 B.R. 846, 850 (Bankr. S.D.N.Y. 2014) ("Although the 24% default rate . . . is exceedingly high . . . similar rates have

been enforced by New York courts."). Accordingly, the rate is
not so high as to raise the issue of a penalty, and this Court
declines to lower the default interest rate as a matter of
equity.

Second, the defendant argues that the default interest
should have been stopped at August 25, 2022, when this Court
determined that foreclosure was warranted. Specifically, the
defendant objects to the five-month delay between the
plaintiff's first indication of its intention to seek a judgment
of foreclosure and sale and its motion for the entry of a final
judgment. See Def.'s Obj. to R&R at 6-7. However, this delay was
neither so long nor caused by the plaintiff's bad faith as to
warrant termination of the default interest rate. See Teves
Realty Corp. v. Terry, 14-cv-3226, 2021 WL 3912297, at *2
(E.D.N.Y. Sept. 1, 2021) (citing Dayan v. York, 859 N.Y.S.2d
673, 674 (App. Div. 2008)) (finding that a four-month delay not
attributable to the plaintiff was insufficient to warrant
tolling).

Finally, the defendant argues that there should be no
default interest prior to April 2020 because, before that date,
the defendants were still making payments. While these payments
avoided monetary defaults, the defendant nevertheless triggered
a "Cessation of Operations" default after May 2018 by no longer
operating the 70 Broad Street property in Manhattan as a "mixed-

7

use office and residential building" and instead "providing
fictitious rent rolls to the plaintiff" and thereby
"misrepresenting the building's occupancy." R&R at 9 (citing
Mem. Op. & Order on Mot. for Summ. J. at 18, ECF No. 136).

The defendant dismisses the non-monetary defaults as merely
"technical," and as thus not warranting the application of
default interest. Def.'s Obj. to R&R at 9. But the parties
contracted for default interest rates for all defaults, not
simply for payment defaults. The defendant therefore objects to
the "contracted-for financial consequence of [its] own failure
to do that which [it] promised to do." 1029 Sixth v. Riniv
Corp., 777 N.Y.S.2d 122, 128 (App. Div. 2004); see also Hyundai
Cap. Am. v. Nemet Motors, LLC, 19-cv-5506, 2019 WL 7598668, at
*5 (E.D.N.Y. Oct. 29, 2019) ("[T]he technical nature of a
default does not change the fact that Defendants defaulted under
the Agreements . . . . A default is a default is a default."),
report and recommendation adopted, 2019 WL 6337526 (E.D.N.Y.
Nov. 27, 2019). It is not for this Court to second-guess
sophisticated parties with respect to the terms of the loan
agreement. See McVey v. Simone, 424 N.Y.S.2d 265, 267 (App. Div.
1980) ("Substantial noncompliance with the terms of an option
clause cannot be rewarded by a judicial forgiveness that
redounds to the detriment of the other party to the contract.").

**B.**

The defendant also objects to the Magistrate Judge's recommended award of attorney's fees. It contends that the plaintiff's lawyers failed to meet their <u>prima facie</u> burden in their request for attorney's fees because the plaintiff's lawyers did not submit detailed billing records with their initial papers. <u>See</u> Def.'s Obj. to R&R at 9. However, Keith Brandofino, the plaintiff's counsel, submitted the invoices with his reply affidavit on March 17, 2023, <u>see</u> Reply Declaration of Keith M. Brandofino ("Brandofino Decl."), ECF No. 152, in response to the defendants' opposition to the motion for judgment, <u>see</u> Defs.' Opp'n to Mot. for J. of Foreclosure at 15-17, ECF No. 151. These invoices included the detailed billing records with the attorneys' names, the tasks they completed, and the time spent on each of these tasks. <u>See</u> Brandofino Decl., Ex. A, ECF Nos. 152-1 and 152-2. The Magistrate Judge found that both the billing rates and total fees were reasonable. <u>See</u> R&R at 22. The Magistrate Judge also made it clear that she was scrutinizing the work conducted by the attorneys. <u>See</u> <u>id.</u> at 19-22 (reviewing each attorney's hourly rate, time dedicated to each task, and total work completed).

The parties participated in two arguments after the billing records were submitted and the Court specifically asked to be directed to the billing records at the first conference. <u>See</u> Tr.

9

at 21-22, ECF No. 213. The defendant could have submitted any objections after the Brandofino declaration but failed to do so. See Yee v. Panousopoulos, 110 N.Y.S.3d 116, 118 (App. Div. 2019) ("The function of reply papers is to address arguments made in opposition to the position taken by the movant."). The defendant also failed to raise specific objections at either of the arguments.

The defendant now claims that the billing records were improper because they reflected block billing practices. Block billing is not prohibited in this Circuit, as long as the Court can determine, from context, the overall reasonableness of the total hours claimed. See HTV Indus., Inv. v. Agarwal, 317 F. Supp. 3d 707, 723 (S.D.N.Y. 2018). In this case, this Court's independent review of the billing records indicates that they were sufficiently detailed for the Court to understand the work that was done. Moreover, given the number of proceedings in this case with which this Court is familiar, the amount of work done was not excessive and the billing rates were reasonable.

**C.**

Finally, the defendant objects to advances of $1,357,834.89 for tax and insurance payments, $249,410.61 for accrued interest on tax and insurance payments, and $426,578.19 in property protective advances. The defendant argues that the amounts are insufficiently supported, but the details and proof of those

10

advances were submitted with a declaration in support of the motion for judgment of foreclosure. See Declaration of Javier Callejas, ECF No. 149. The defendant does not present any specific evidence or argument that those disbursements were inaccurate or unnecessary. Accordingly, upon de novo review, there is no basis to vacate those amounts.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The Court adopts the Magistrate Judge's Report & Recommendation in its entirety, and the defendant's objections are **overruled.** The Clerk is directed to close all pending motions. Given the complexity of the amounts to be included in the Judgment, including a current calculation of interest, the plaintiff is directed to submit a proposed judgment by **April 25, 2024.** The defendants may file any objections to the calculations by **April 30, 2024.** The plaintiff may reply by **May 3, 2024.**

**SO ORDERED.**

Dated:   New York, New York
         April 18, 2024

                                    John G. Koeltl
                            United States District Judge

11