UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2015-NXS2, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2015-NXS2, acting by and through Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of July 1, 2015,<br><br>Plaintiff,<br><br>- against -<br><br>WINTA ASSET MANAGEMENT LLC; NEW YORK CITY DEPARTMENT OF FINANCE; SHUIGUN CHEN; 70 BROAD LLC; CAIHONG CHEN; CAIYUN CHEN; MINGSEN CHEN; GUI XIN HONG; LIU TIEMIN; WANG YAN; and HAIFENG CHEN,<br><br>Defendants. | Civil Action File No.<br>20-cv-05309-JGK<br><br><br><br><br><br><br><br><br>**JOINT ELECTRONIC DISCOVERY ORDER** |

One or more of the parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Model Joint Submission and Proposed Order (and any subsequent to this) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Model Joint Submission and Proposed Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

**(1)**     **Brief Joint Statement Describing the Action:**

Plaintiff Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-NXS2, Commercial Mortgage Pass-Through Certificates, Series 2015-NXS2 ("Plaintiff") initially commenced this action on July 1, 2020 to enforce its contractual rights on a $15,000,000.00 defaulted loan (the "Loan"), of which Plaintiff was the previous holder.  Repayment of the Loan was secured by, *inter alia*, that property located at 70 Broad Street, New York, New York (the "Property").  By that Order & Judgment dated May 6, 2024 (ECF No. 259), the Court entered final judgment of foreclosure and sale and ordered that there was due to Plaintiff the amount of $23,758,480.13 as of February 6, 2023.  The Property has since been sold for a credit bid of $20,000,000.00 by way of voluntary bankruptcy action commenced on May 17, 2024 (*In re: Winta Asset Management LLC*, Chapter 11, Case No. 24-10848 (MEW)).  Plaintiff now brings the Second Amended Complaint (ECF No. 286), asserting (i) contractual entitlement to amounts due and owing for the deficiency of the remaining amounts due under the Loan, and (ii) statutory and tortious entitlement to damages based upon alleged fraudulent acts undertaken by defendants.

Defendants Winta Asset Management LLC, 70 Broad LLC, Mingsen Chen, Caihong Chen, Caiyun Chen, Gui Xin Hong, and Shuigun Chen (collectively, "Defendants") deny the allegations set forth in the Second Amended Complaint, and have asserted the following defenses: (1) lack of subject matter jurisdiction due to lack of standing (Fed. R. Civ. P. 12(b)(1); U.S. Const. Art. III); (2) factual impossibility of RICO and fraud claims (18 U.S.C. § 1962(c)); (3) lack of proximate causation and damages; (4) failure of conditions precedent; and (5) satisfaction of the debt.

   **(a)**     **Estimated amount of Plaintiff's claims:** Between $1,000,000 and $49,999,999.

   **(b)**     **Estimated amount of Defendants counterclaims:** n/a

**(2)**     **Competence:** Counsel certify that they are sufficiently knowledgeable in matters relating to their client(s)' technological systems to competently discuss issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

**(3)**     **Meet and Confer:**  Pursuant to Fed. R. Civ. P. 26(f), counsel **must** meet and confer regarding matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference).  Counsel now certify that they met and conferred to discuss these issues on December 1, 2025 and January 22, 2026.

**(4)**     **Unresolved Issues:**  After the meet-and-confer conference(s) taking place on the date(s) listed above, the following issues remain outstanding and/or require court intervention: ___ Preservation; ___ Search and Review; ___ Source(s) of Production; Form(s) of Production; ___ Identification or Logging of Privileged Material; ___ Inadvertent Production of Privileged Material; ___ Cost Allocation; and/or ___ Other.  Please briefly describe any specific issues below:

#531072955_v5 527548.00006

N/A

To date, the parties have addressed the following issues:

**(5)**    **Preservation:**

**(a)**    The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc. To the extent that the parties have reached agreement as to preservation methods, provide details below:

As used herein, the term "ESI" includes, but is not limited to, e-mails and attachments, electronic word processing documents, text files, spreadsheets, graphics, databases, calendars, data stored on hard drives, information contained on laptops or other portable electronic devices, network access information and backup materials, Native Files and the corresponding ordinarily maintained Metadata.

As used herein, the term "Metadata" means: (a) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (b) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, sent, received or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

As used herein, the term "Native File(s)" means ESI in the electronic format of the application in which such ESI was created. Native Files are a subset of ESI.

The Parties acknowledge and agree that they have an obligation to take reasonable and proportional steps to preserve relevant information in the Party's respective possession, custody or control. The Parties further agree to take reasonable steps to preserve ESI in a form that will permit the collection and production of Metadata.

The Parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data, provided, however, that the Parties shall preserve all relevant ESI in their possession, custody or control.

3

The following categories of ESI need not be preserved:

a. Deleted, slack, fragmented, or other data only accessible by forensics, with the clarification that data that is deleted but otherwise preserved in a form that does not require forensics to access is still subject to preservation

b. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

c. Online access data such as temporary internet files, history, cache, cookies, and the like;

d. Historical data in metadata fields that are frequently updated automatically, such as last-opened dates, provided that the most current data for such fields is preserved;

e. Back-up data that are duplicative of data that are more accessible elsewhere;

f. Server, system or network logs;

g. Data remaining from systems no longer in use that is unintelligible on the systems in use;

h. Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere and preserved;

i. Backup tapes or systems; and

j. Personal files of party employees on computers and/or mobile devices owned personally by the employee and/or not primarily used for business purposes.

**(b)** State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications:

Plaintiff transmitted a "litigation hold" notice on or about November 30, 2020

4

**(c)**    The parties anticipate the need for judicial intervention concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored information:

Not at this time

**(6)    Search and Review:**

**(a)**    The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. To the extent the parties have reached agreement as to search and review methods, provide details below:

Based upon the Parties' representations concerning the custodians and location of relevant data, and subject to any subsequent agreement or order, the Parties have agreed that custodian files will be searched for responsive documents as set forth herein. The list of custodians is subject to change as the Parties review ESI and other discovery produced by the other Party.

**Plaintiff's Custodians.**  For the purpose of searching for responsive ESI, Plaintiff agrees that ESI shall be collected and preserved from each of the following custodians:

a.    **Javier Callejas**
Title: Vice President

**Defendants' Custodians.**  For the purpose of searching for responsive ESI, Defendants agree that ESI shall be collected and preserved from each of the following custodians:

a.    **Caihong Chen**
Title: Vice President

The Parties agree that the applicable date range of discoverable documents is from June 15, 2011, the date that the tenants began to occupy space in the

#531072955_v5 527548.00006

Property as set forth in Schedule 3-1 of the Loan Agreement, to July 1, 2020, the date of commencement of this action.

The Parties agree to negotiate in good faith on search terms to be used in their respective ESI searches.  The final agreed upon Search Terms will constitute the basis upon which the opposing party(ies) will search for responsive documents to review and potentially produce (subject to any privileges) in response to that Party's demands for discovery and inspection.

**(b)**    State if the parties anticipate the need for judicial intervention concerning the search and review of electronically stored information:

Not at this time

**(7)    Production:**

**(a)**    **Source(s) of Electronically Stored Information:** The parties anticipate that discovery may occur from one or more of the following potential source(s)of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:

As set forth herein, "ESI" includes, but is not limited to, e-mails and attachments, electronic word processing documents, text files, spreadsheets, graphics, databases, calendars, data stored on hard drives, information contained on laptops or other portable electronic devices, network access information and backup materials, Native Files and the corresponding ordinarily maintained Metadata.

**(b)**    **Limitations on Production:** The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:

None at this time.

#531072955_v5 527548.00006

**(c)      Form(s) of Production:**

**(1)**      The parties have reached the following agreements as to the form(s) of productions:

The Parties agree that all ESI shall be produced in a manner compatible with Disco or Relativity e-discovery software.  The Parties agree to make all reasonable efforts to resolve any issues of non-compatibility with respect to the production of ESI, to the extent such issues may arise. Nothing in this Stipulation shall limit the Parties' right or ability to change their third-party vendor, or hire any other third-party vendor(s) or consultant(s) to assist in the collection, review, and/or production of ESI in this Action.

The parties agree to produce documents in TIFF, native and/or a combination thereof file formats.  If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.  The parties agree not to degrade the searchability of documents as part of the document production process. Absent special circumstances, Excel files, .csv files and other similar spreadsheet files will be produced in Native Format with all cells, columns, rows and worksheets and other information unhidden and expanded.  If responding to a discovery request requires production of ESI contained in a database, the producing Party at its option may provide the database as a Native Format file or may comply with the discovery request by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format).

**Unique IDs (Bates Numbers)**.  All materials produced pursuant to this Stipulation shall bear a Bates Number.  The parties shall ensure that this Bates Numbering format remains consistent, and is sequential, across all ESI productions.  If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

**De-duplication**.  A Party is only required to produce a single copy of a responsive document.  The Parties shall make reasonable efforts to de-duplicate ESI to avoid substantially duplicative productions based on industry standard MD5 hash values or SHA-1 values at the document level. ESI that is not an exact MD5 hash or SHA-1 hash value duplicate may not be removed. Further, email shall be de-duplicated globally across custodians.  De-duplication of email shall not break apart families.  The identity of other custodians of de-duplicated email documents must be listed in the "Other Custodians" and "Other Custodian FilePaths" fields of the copy of the document that is produced.  Paper documents may not be eliminated as duplicates of responsive ESI.

#531072955_v5 527548.00006

**Exception Files**.  The Parties will make reasonable efforts to identify as exception files those documents that cannot be produced or imaged due to technical difficulties (such as corruption, password protection, digital rights management, or proprietary software associated to the file).  Identified exception files will be listed on a log generated by a Party's vendor.

**Hard-Copy Documents**.  Data associated with any hard-copy documents shall be converted into an electronic format and provided in TIFF or format, with each image bearing a unique Bates number, and document-level OCR shall be provided.

**Color**.  Documents containing color need not be produced in color in the first instance.  However, if good cause exists for the receiving Party to request production of certain documents in color, the receiving Party may request production of such documents in color by providing: (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format.  The producing Party shall not unreasonably deny such requests but need not make such production until the Parties reach agreement regarding the additional costs associated with the production of documents in color.

**Time Zone**.  When processing ESI, Coordinated Universal Time (UTC) should be selected as the time zone.  To the extent that a Party has already processed ESI using a different time zone, the producing Party will note the time zone used in its processing.

**Metadata Fields**.  The producing Party shall provide Metadata corresponding to the following fields, where available, in the accompanying Load File:

    a.      Production::Begin Bates
    b.      Production::End Bates
    c.      Production::Begin Attachment
    d.      Production::End Attachment
    e.      Confidentiality
    f.      Custodian
    g.      File Name
    h.      File Extension
    i.      Date Time Last Modified
    j.      Author
    k.      Email To
    l.      Email CC
    m.      Email BCC
    n.      Email From
    o.      Email Subject

8

#531072955_v5 527548.00006

       p.       Email Sent Date Time

       q.       Email Received Date Time

       r.       Production::Has Redactions (Y/N)

       s.       MD5 Hash

       t.       Date Time Created

       u.       Text Precedence

       v.       FILE_PATH

**(2)** Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):

None at this time

**(3)** The Parties anticipate the need for judicial intervention regarding the following issues concerning the form(s) of production:

None at this time

**(d)** **Privileged Material:**

**(1)** **Identification:** The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents:

The Parties will comply with the Federal Rules of Civil Procedure and/or the Local Rules of the Eastern District of New York addressing privilege, including but not limited to Federal Rule of Civil Procedure 26.

Activities undertaken in compliance with the duty to preserve ESI are protected from disclosure and discovery. Nothing contained herein shall be construed to limit a Party's right to conduct a review of documents, ESI or information (including Metadata) to be produced for relevance, responsiveness, and/or segregation of privileged and/or protected information.

A Party may redact from any produced images or native files 1) information or personal data that is protected from disclosure by applicable privilege or other applicable privacy law or regulation, that contains commercially

9

sensitive, proprietary or non-responsive information, or 2) entire attachments that are wholly non-responsive, or produce slipsheets in their place.  Each redaction shall be indicated clearly on the redacted document.

**(2)**    **Inadvertent Production/Claw-Back Agreements:** Pursuant to Fed. R. Civ. Proc. 26(b)(5) and Fed. R. Evid. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g., "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to Fed. R. Evid. 502(d), etc.):

If, in connection with this litigation, and despite having taken reasonable steps to prevent the disclosure of information that it claims is subject to a claim of attorney-client privilege or attorney work product, a producing party inadvertently discloses information subject to a claim of attorney-client privilege or attorney work production protection ("Inadvertently Disclosed Privileged Information"):

a.    Such disclosure, in itself, shall not constitute or be deemed a waiver of forfeiture of any claim of privilege or work production protection with respect to the Inadvertently Disclosed Privileged Information and its subject matter.

b.    If a producing party makes a claim of inadvertent disclosure, all receiving persons shall, within five (5) business days, return or destroy all copies of the Inadvertently Disclosed Privileged Information, and provide a certification of counsel that all such information has been returned or destroyed.

c.    Within five (5) business days of the notification that such Inadvertently Disclosed Privileged Information has been returned or destroyed, the producing party shall produce a privilege log with respect to the Inadvertently Disclosed Privileged Information.

d.    If a receiving party thereafter moves the Court for an order compelling production of the Inadvertently Disclosed Privileged Information, that motion shall be filed under seal, and shall not assert as a ground for entering such an order the mere fact of the inadvertent production.  The producing party retains the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Privileged Information.

**(3)**    The parties have discussed a 502(d) Order: Yes____; No__X__

10

*The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.*

**(e)** **Cost of Production:** The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:

**(1)** Costs:

The parties have not fully determined the estimated costs associated with the production of electronically stored information, and reserve the right to supplement this Model Joint Electronic Discovery Submission and Proposed Order as warranted.

**(2)** Cost Allocation: The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:

Not at this time

**(3)** Cost Savings: The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

Not at this time

**(f)** State if the parties anticipate the need for judicial intervention concerning the production of electronically stored information:

Not at this time

**(8)** **Other Issues:**

11

12

#531072955_v5 527548.00006

The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court:

Party: N/A                                         By: N/A

Party:                                             By:

Party:                                             By:

Party:                                             By:

Party:                                             By:

Party:                                             By:

The next scheduled meet-and-confer conference between the parties to address electronic discovery issues, including the status of electronic discovery and any issues or disputes that have arisen since the last conference or Order, shall take place on: N/A . The next scheduled conference with the Court for purposes of updating the Court on electronic discovery issues has been scheduled for N/A . Additional conferences, or written status reports, shall be set every four (4) weeks, as determined by the parties and the Court, based on the complexity of the issues at hand. An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the parties. The parties may jointly seek to adjourn the conference with the Court by Letter-Motion at least 48 hours in advance of a scheduled conference, if the parties agree that there are no issues requiring Court intervention

Additional Instructions or Orders, if any:

13

#531072955_v5 527548.00006

14

Dated:  New York, New York
        January 23, 2026

SO ORDERED

VALERIE FIGUEREDO
United States Magistrate Judge

14